652 A.2d 855

**ESTATE OF Abram G. NESBITT, Deceased.**

**Appeal of Abram NESBITT, III, Marie Lynch Nesbitt, Stefenhagens, Samuel Nesbitt, Jr., and Mrs. Frank Nesbitt, Guardian of Andrew McCormick Nesbitt and Graham Rhodes Nesbitt.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1994.

Filed Jan. 10, 1995.

Frank Townend, Wilkes–Barre, and Craig E. Ziegler, Philadelphia, for appellants.

John E. Morris, III, Kingston, for Nesbitt Memorial Hosp., participating party.

Before CAVANAUGH, POPOVICH and SAYLOR, JJ.

SAYLOR, Judge:

This is an appeal by the residuary beneficiaries of the Estate of Abram G. Nesbitt from two orders entered in the Orphans' Court Division of the Court of Common Pleas of Luzerne County denying exceptions to a decree nisi, and affirming the decree nisi as a final order. We affirm.

On May 3, 1926, Abram G. Nesbitt of Kingston, Pennsylvania died, leaving a will dated April 1, 1922 and three codicils. Under the second codicil dated September 13, 1924, the testator bequeathed the sum of $400,000.00 to the Second National Bank of Wilkes–Barre, as Trustee, to invest and reinvest the money and to pay the annual income from the corpus of the trust to the Nesbitt West Side Hospital, "so long as it exists as a separate institution caring for the sick and injured." The terms of the charitable trust created by the second codicil did not provide for any alternate gift or reversion.

In 1928, Nesbitt West Side Hospital was renamed Nesbitt Memorial Hospital, and in 1983, Nesbitt Memorial Hospital became a subsidiary of Nesbitt Hospital Foundation. Throughout this period and until the beginning of 1992, the Trustee continued to pay the income from the charitable trust to Nesbitt Hospital without objection from the residuary beneficiaries under the Nesbitt will (Appellants), notwithstanding the corporate changes experienced by the hospital.

In 1992, however, in order to resolve severe economic difficulties which Nesbitt Hospital was facing, the hospital, along with Wilkes–Barre General Hospital, became an affiliate of the Wyoming Valley Health Care System, Inc. (WVHCS), effective August 27, 1992. At this time, counsel for Appellants informed the Trustee by letter that the income beneficiary, Nesbitt Hospital, had ceased to exist as a separate institution, and recommended that the Trustee make its final distribution to Nesbitt Hospital. On June 30, 1993, Nesbitt Hospital merged with and into Wilkes–Barre General Hospital. Under the terms of the merger agreement, the new corporate entity was known as Wyoming Valley Health Care Systems–Hospital. The merger agreement further provided that although Nesbitt Hospital was now part of a new corporate structure, it would continue to be known as Nesbitt Memorial Hospital and would continue to occupy the same campus that it had occupied prior to the merger. The hospital would thus continue to exist as a separate facility or division of the combined entity, with its own name, management structure and identity. The merger agreement also specifically stated that trust arrange-

ments or monies already in place for the benefit of Nesbitt Hospital would only be used for that hospital after the merger occurred.

Following receipt of the letter from counsel for Appellants, the Trustee filed a Petition for Adjudication with the Orphans' Court on December 29, 1992, submitting the following question for adjudication: "Whether Nesbitt Memorial Hospital, the income beneficiary of the trust, has ceased to exist as a separate institution caring for the sick and injured."

A hearing was held on July 14, 1993, and on July 20, 1993 the Orphans' Court issued a decree nisi and memorandum opinion in which it held that the evidence adduced at the hearing had established that Nesbitt Hospital continued to exist as a "separate institution caring for the sick and injured." The court also concluded that the testator had not intended his heirs to benefit from the charitable trust created under the second codicil to his will.

Appellants filed exceptions to the decree nisi, and the Orphans' Court dismissed the exceptions by order and opinion dated December 6, 1993. By order dated February 18, 1994, the Orphans' Court affirmed the decree nisi of July 20, 1993 as a final order.

On appeal, Appellants contend that the Orphans' Court erred in determining that Nesbitt Hospital continued to operate as a "separate institution," pursuant to the terms of the testamentary trust created by Abram G. Nesbitt. Appellants argue that Nesbitt Hospital no longer exists as a separate institution within the meaning of the provision in the testamentary trust, because it is no longer a separate corporate entity and the use or disposition of all of its assets is at the complete discretion of WVHCS. Appellants further assert that, in the event that this court finds that the Orphans' Court erred in making this determination and that the trust has in fact terminated, the doctrine of *cy pres* is inapplicable, since the testator's intent would be thwarted by the continued payment of the trust income to Nesbitt Hospital under its new corporate structure. Accordingly, Appellants contend that as

residuary beneficiaries under the testator's will, they are entitled to receive the assets of the trust, which has allegedly failed upon the corporate reorganization of the hospital.

In reviewing the decision of the Orphans' Court, this court must accord the findings of the Orphans' Court the same weight and effect as a jury verdict, and will not disturb those findings absent manifest error. *In re Benson,* 419 Pa.Super. 582, 585, 615 A.2d 792, 793 (1992). An appellate court can modify an Orphans' Court decree only if

> the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. [*In re Benson,* 419 Pa.Super. 582, 615 A.2d 792 (1992).] "The test to be applied is not whether, we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion." *In re Estate of Kessler,* 419 Pa.Super. 142, 146, 615 A.2d 65, 67 (1992), *allocatur denied,* 533 Pa. 660, 625 A.2d 1193 (1993).

*Appeal of Gannon,* 428 Pa.Super. 349, 362, 631 A.2d 176, 182 (1993).

"In interpreting a trust agreement, the intent of the settlor is paramount and if that intent is not contrary to law, it must prevail." *Estate of Taylor,* 361 Pa.Super. 395, 398, 522 A.2d 641, 642 (1987), citing *Matter of Estate of Krebs,* 334 Pa.Super. 635, 483 A.2d 919 (1984). "To ascertain this intent, a court must examine the language of the document, the scheme of distribution, and the facts and circumstances existing at the creation of the trust." *Trust Agreement of Cyrus D. Jones Dated June 24, 1926,* 414 Pa.Super. 361, 367, 607 A.2d 265, 268 (1992). Furthermore, charitable trusts are favorites of the law because they are in relief of the public burden, *Estate of James,* 414 Pa. 80, 86, 199 A.2d 275, 278 (1964), and a gift, even for a specific charitable purpose, should be liberally construed whenever reasonably possible.

*In re Pruner's Estate,* 400 Pa. 629, 634, 162 A.2d 626, 629 (1960).

 Here, during the July 14, 1993 hearing, the Orphans' Court heard testimony from Ronald Stern, the former president and chief executive officer of Nesbitt Memorial Hospital. Stern testified that it was intended by the affiliation agreement of April 28, 1992 that the hospital would continue to maintain a separate existence, despite its pending merger with Wilkes–Barre General Hospital on June 30, 1993. Thus, Nesbitt Hospital continues to be licensed as a separate hospital under the laws of Pennsylvania, has separate Medicare and Medicaid provider numbers, has a separate contract with Blue Cross, and is separately accredited by the Joint Commission and Health Care Organization. According to Stern, money from Medicare, Blue Cross or Medical Assistance continues to go into an account called "Nesbitt Memorial Hospital," nearly one thousand employees still receive a Nesbitt Memorial Hospital paycheck, the accounts payable system remains in the name of Nesbitt Memorial Hospital, and most importantly, all income from the Nesbitt testamentary charitable trust is confined for the sole use of Nesbitt Memorial Hospital. Thus, the funds which the testator intended to be used solely by Nesbitt Memorial Hospital are not commingled with any other hospital institution affiliated with WVHCS, and separate accounting, budget and bank systems are maintained for the Nesbitt trust funds.

John J. Cunningham, III, the attorney who prepared the legal documents during the negotiations for the affiliation and merger of the hospitals, also testified at the hearing. Cunningham confirmed that the merger documents included specific provisions that trust funds already in place for the benefit of Nesbitt Hospital would continue to be used only for that hospital after the merger. Cunningham stated that the decision was made at the time of the merger that although Nesbitt Hospital's corporate entity would be merged into Wilkes–Barre General Hospital, Nesbitt Hospital would continue as a separate facility, with its own name, management structure, and identification. Accordingly, although Nesbitt Hospital no

longer has its own corporate board of directors, it continues to have its own group of administrators, and has its own auxiliary group for the purpose of fundraising and soliciting.

Based upon the foregoing evidence adduced at the hearing before the Orphans' Court, we find no error on the part of the court in concluding that Nesbitt Memorial Hospital continues to exist as a "separate institution caring for the sick and injured." In examining the facts and circumstances at the time the testamentary trust was created, the Orphans' Court noted that in 1924, when Abram G. Nesbitt executed the second codicil to his will, there were only four hospitals in the Wilkes–Barre/Kingston area, each with a limited number of beds. Thus, the court reasoned, it was evident that the testator appreciated the lack of available medical care for the residents of the area in which he lived. In merging with Wilkes–Barre General Hospital, Nesbitt Hospital saved sub-stantial expenses, thus enabling it to continue providing im-proved and expanded medical care for the sick and injured, which was the primary purpose for which the charitable trust was created.

Furthermore, as the Orphans' Court pointed out, if at any time the trust fund income is not applied to Nesbitt Hospital, Appellants can seek relief on the basis that the trust provision has failed. At present, however, there is no evidence that the trust provision has failed; on the contrary, the purpose of the trust has been perpetuated by the merger of the hospitals.

Because we find that there is competent and adequate evidence on the record to support the Orphans' Court's conclu-sion that Nesbitt Hospital continues to exist as a separate institution, we do not reach Appellants' contention concerning the doctrine of *cy pres,* and the orders of the Orphans' Court are affirmed.

Orders affirmed.