J-A34016-14

2015 PA Super 111

| | | |
|---|---|---|
| IN RE: GROVER C. SHOEMAKER, TST, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: GEISINGER-BLOOMSBURG | : | |
| HOSPITAL, | : | No. 828 MDA 2014 |

Appeal from the Decree Entered March 25, 2014,
In the Court of Common Pleas of Columbia County,
Orphans Court, at No. 2012 OC 231.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and STABILE, J.

OPINION BY SHOGAN, J.:                    **FILED MAY 07, 2015**

Appellant, Geisinger-Bloomsburg Hospital ("GBH"), appeals from a decree entered on March 25, 2014, in the Orphans' Court division of the Columbia County Court of Common Pleas.  On appeal, GBH challenges, *inter alia*, the Orphans' Court's creation of a Pour Over Endowment Trust and the requirement that charitable trust funds be spent only in years in which GBH has an operating surplus.  For the reasons that follow, we affirm in part, and reverse in part, the decree entered on March 25, 2014.[1]

---

[1]  On September 30, 2014, GBH filed two separate motions with this Court: 1) a motion to dismiss First Columbia Bank & Trust Company ("First Columbia") for lack of standing, or in the alternative, to consider First Columbia an *amicus curiae* and strike references in its brief to settlement; and 2) a motion to dismiss the Bloomsburg Library for lack of standing.  We **GRANT** GBH's motion to consider First Columbia, as an administrator of trusts involved in this appeal, as an *amicus curiae* and strike references in First Columbia's brief to settlement.  *See In re Pearson's Estate*, 275 A.2d 336, 338 n.3 (Pa. 1971) (treating an administrator/stakeholder's brief as an *amicus curiae* brief only where the administrator/stakeholder was not an aggrieved party and the issue of standing was raised).  However, our

This case concerns the allocation and distribution of funds from several charitable trusts to the hospital following its affiliation with Geisinger Health System Foundation ("GHSF"). On November 15, 2012, First Columbia filed a petition pursuant to 20 Pa.C.S. § 7711 concerning the administration of eight trusts. First Columbia sought judicial interpretation of the effect that multiple corporate mergers and the changing corporate identity of the original intended trust recipient, The Bloomsburg Hospital, had on these eight trusts.[2] On January 18, 2013, GBH filed its response.

On March 15, 2013, the Attorney General of Pennsylvania, in its capacity as *parens patriae*, filed its statement of position in this matter.[3] The Attorney General concluded that despite the changes in corporate identity, the trusts at issue may still "be administered in exact conformity with the Settlors' intended schemes of distribution because [GBH] continues

_____

decision on this issue is limited to the facts of this case and in accordance with our Supreme Court's statement that such determination is "made without establishing precedent." **Id**. Additionally, we **GRANT** GBH's motion to dismiss the Bloomsburg Library for lack of standing. Because the Bloomsburg Library has filed no brief, there is nothing that we may consider as an *amicus* brief.

[2] Additional charitable trusts were subsequently put at issue.

[3] We note that the Attorney General, on behalf of the Commonwealth as *parens patriae* for charities, has not filed a brief in this matter. Charitable trusts are continuously subject to the *parens patriae* power of the Commonwealth through its Attorney General and the supervisory jurisdiction of the courts. **In re Estate of Coleman**, 317 A.2d 631, 634 (Pa. 1974); **In re Estate of Voegtly**, 151 A.2d 593, 594 (Pa. 1959).

to operate as a non-profit hospital in Bloomsburg, Pennsylvania." Attorney General's Statement of Position, 3/15/13, at ¶9. The Attorney General was satisfied that no funds from the trusts had been, or would be, unlawfully diverted from GBH. *Id*. at ¶11. However, the Attorney General made the following recommendation:

> The Commonwealth respectfully recommends language which affirms GHSF's commitment to honor the settlors['] intentions as follows, "[A]ny and all funds received from the charitable trusts created by John Paul Barger[,] Reuben H. Learn, Mary Elizabeth McNinch, Hazel W. Shoemaker, Grover C. Shoemaker, Mary F. Sneidman, H.W. Titman, Mary W. Wolfe, and any other present or future trust which references "Bloomsburg Hospital" shall be restricted exclusively to the Geisinger-Bloomsburg Hospital facility in Bloomsburg, Pennsylvania to be utilized in conformity with the terms of each granting instrument and shall not be diverted to any other use or facility without further Order of Court."

*Id*. at ¶12. Following hearings on December 27, 2013, and February 10, 2014, the Orphans' Court issued its findings of fact and conclusions of law. Due to the extensive nature of the court's findings, we shall not restate them here. However, a brief summary is in order.

On February 11, 1905, an entity known as "The Bloomsburg Hospital" was incorporated. The Orphans' Court took judicial notice of the fact that the hospital's stated purpose was caring for "the sick ... in the county of Columbia, especially in and about the Town of Bloomsburg." Findings of Fact, 3/25/14, at ¶ 7. The Bloomsburg Hospital later became known as Bloomsburg Hospital. Through a series of complicated transactions,

Bloomsburg Hospital and related and ancillary corporate entities have been joined under the larger corporate umbrella of GHSF. GHSF is the controlling corporation of an integrated health care system with GBH, formerly known as Bloomsburg Hospital, operating as a hospital in Bloomsburg, Pennsylvania. *Id*. at ¶¶ 7-21; Conclusions of Law, 3/25/14, at 11. The trusts at issue all directed that certain funds from the individual trusts were for the benefit of Bloomsburg Hospital.

As stated by First Columbia, the question before the Orphans' Court was "the propriety of continued income distributions to GBH and the appropriateness of any conditions or restrictions applicable to future distributions should the court conclude that GBH continues to be qualified as a beneficiary of each Trust." First Columbia's *Amicus Curiae* Brief at 6-7. According to First Columbia, its concern was "whether the amended Articles [of Incorporation of GBH] permitted Trust funds to be diverted to other charitable entities under the control of GHSF that did not benefit the Bloomsburg Hospital and Bloomsburg area." *Id*.

The Orphans' Court found that "[t]he hospital in Bloomsburg remains in existence, both as a hospital located in Bloomsburg and as a separate legal entity, whether known as BH [Bloomsburg Hospital] or GBH." Findings

of Fact, 3/25/14, at 20. However, the court then concluded, in relevant part,[4] as follows:

15. The charitable purpose of the settlors, specifically, to benefit the intended locale and population of the charity which is specified to be Columbia County, especially in and about Bloomsburg, will become unable to be assured under GBH's interpretation, and accounting restrictions are necessary to avoid an unlawful, impracticable and wasteful result.

16. The intent of all of the settlors of the Trusts at issue was to benefit BH [Bloomsburg Hospital], consistent with the object expressed in the original Charter to TBH [The Bloomsburg Hospital], being the population of Columbia County, especially in and about the Town of Bloomsburg. A further intent was to facilitate the availability of an acute care hospital, serving said population, providing all of the BH Services.

17. Achievement of the settlors' intents cannot be assured without accounting restrictions, given GBH's stated intent of distributing Trust income throughout the Geisinger system in the event of consolidated surpluses at GBH. Money is fungible. A dollar into a bank account is always a dollar in a bank account. GBH and GHSF cannot be permitted to regard the first $100,000 of operational expenses to be paid for by a hypothetical $100,000 of Trust income, and then pay the dollars which come from patient revenues to affiliate hospitals 100 miles away from Bloomsburg when there is an operational net profit, at least limited to the Trust income. Simply put: That is too easy.

18. Orphans' Courts are permitted to prescribe a tailored accounting to ensure compliance with a settlor's intent. []

---

[4] The Orphans' Court also detailed the irregularities and errors that occurred in the transaction that placed GBH under the corporate umbrella of GHSF. Conclusions of Law, 3/25/14, at ¶¶ 1-10. However, the Orphans' Court noted that the parties retroactively "re-closed the Transaction with proper authorizing documents" and that "equity deems that which ought to be done as having been done." *Id*. at ¶ 11 (citation omitted). Accordingly, any issue concerning the transaction has not been challenged and is not before us.

19. Pursuant to 20 Pa.C.S. §7711(c), a judicial proceeding involving a trust may relate to any matter involving the trust's administration, including a request for declaratory judgment. This particular section further provides this court with the authority to clarify and define the terms and conditions of administration of the Trusts through the Order and Decree which follows, for the same reasons articulated above.

Conclusions of Law, 3/25/14, at ¶¶ 15-19.

The Orphans' Court then applied the doctrine of *cy pres*[5] and issued

the following order:

## ORDER AND DECREE

AND NOW, to-wit, on this 25th day of March, 2014, after hearing held on the Petitions (as defined at paragraph 4. of the Findings of Fact and Discussion), on the basis of the foregoing Finding[s] of Fact, Conclusions of Law and Discussion, it is hereby ORDERED and DECREED as follows:

1. The income from the Trusts, excepting the Bittenbender, Kisner and Stewart estates and/or trusts, shall be distributed to Geisinger Bloomsburg Hospital ("GBH"), subject to the terms and conditions set forth herein.

2. For all Trusts except the Bittenbender, Kisner and Stewart Trusts and/or Estates: An accounting system shall be set up using a Pour Over Endowment Trust, to be administered according to the following terms and conditions:

a. Operating surpluses and losses of GBH shall be determined for the fiscal year at issue. Operating

---

[5] As will be discussed in greater detail below, the *cy pres* doctrine requires that "if the charitable purpose for which an interest is conveyed shall be or become indefinite or impossible or impractical of fulfillment, ... the court shall order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor ...." ***In re Farrow***, 602 A.2d 1346, 1347 (Pa. Super. 1992).

surpluses or losses are to be measured before application of Trust income.

b. If operating surpluses exist for a given fiscal year at issue, all Trust income shall be paid into the Pour Over Endowment Trust. First Columbia Bank & Trust Co. shall serve as the Trustee of the Pour Over Endowment Trust.

c. If there is an operating loss in a given fiscal year, and the absolute value of the operating loss is less than the Trust income, then the Trust income for that fiscal year, limited to the absolute value of the operating loss, shall be paid to GBH to fund that extent of the operating loss. The Trust income for that fiscal year, in excess of the absolute value of the operating loss, shall be paid to the Pour Over Endowment Trust.

d. If there is an operating loss, and the absolute value of the operating loss is more than the Trust income, then all of the Trust income for that fiscal year shall be paid to GBH to fund the operating loss for that fiscal year to the extent of Trust income for that fiscal year. Further, GBH shall be paid monies from the accumulated Pour Over Endowment Trust to fund operating losses of GBH for that fiscal year in excess of the Trust income earned during that fiscal year. In such cases, the payment of accumulated Pour Over Endowment Trust monies shall be limited to that which is necessary to fund operating losses not funded by Trust income for that fiscal year.

e. Notwithstanding anything to the contrary, in addition to the payments permitted above, the Trustees shall pay further Trust income from the applicable fiscal year to the extent necessary to avoid a penalty or forfeiture of said Trust income under applicable law, whether to the Internal Revenue Service or otherwise.

3. As to the Bittenbender, Kisner and Stewart Trusts and/or Estates: The Petitions are dismissed as moot in that there are no assets held in trust or in estates for distribution or management.

4. Payments of Trust Income for all trusts excepting the Bittenbender, Kisner and Stewart Trusts and/or Estates shall be conditioned upon GBH amending their Articles of Incorporation to provide additional language as follows as a restriction upon permissible donations and other transfers to GHSF:

"...except for funds restricted for use at or by Geisinger-Bloomsburg Hospital, which shall be expended solely in connection with the operation of the Geisinger-Bloomsburg Hospital in a manner consistent with the intent of the Donors and in accordance with any explicit instructions governing the application thereof, and in further accordance with applicable orders of court; ..."

5. Within ninety (90) days after the end of a fiscal year, GBH shall provide annual reports to the Attorney General and to the Court Administrator of the 26th Judicial District, specifying:

a. The annual net income from the Trusts (excepting the Bittenbender, Kisner and Stewart Trusts and/or Estates), itemized per trust and setting forth the caption and docket number of this action;

b. The net operating income or loss of GBH;

c. Deposits to, and withdrawals from, the Trusts (excluding the Bittenbender, Kisner and Stewart trusts and/or estates) over the reporting period, specifying the date, amount, payee (for withdrawals), purpose (for withdrawals) and source of funds (for deposits). Further, the balance of each Trust (excluding the Bittenbender, Kisner and Stewart trusts and/or estates) at the beginning and end of the reporting period shall be specified;

d. Deposits to, and withdrawals from, the Pour Over Endowment Trust over the reporting period, specifying date, amount, payee (for withdrawals), purpose (for withdrawals) and source of funds (for deposits). Further, the balance of the Pour Over Endowment Trust at the beginning and end of the reporting period shall be specified;

e. An affidavit from the chief operating or executive officer of GBH (and, if there is no one with either of such titles, the person in the position of chief executive officer of GHSF) affirming that, as of the end of the reporting period and the one (1) year prior, GBH has, or has not, provided all of the following services on a generally available basis: Psychiatry, Obstetrics, General Surgery, General Medical Surgical beds, Emergency Department and Intensive Care Unit (the "BH Services").

6. If any of the BH Services are not generally available at GBH, the Trustees shall make no further disbursements to GBH, and GBH shall return to the Trustee any disbursements made to GBH since the cessation of any such services, until further order of court. The Trustees may rely on information received from the Attorney General, the Court or any other reliable source. Further, GBH shall immediately notify the Attorney General, the Trustees and the Court Administrator of the 26th Judicial District (with the above caption) if GBH, or any successor, ceases to make the BH Services generally available.

7. The Court shall retain jurisdiction.

Findings of Fact and Conclusions of Law, Order and Decree, 3/25/14, at 22-24.

On April 11, 2014, GBH filed timely exceptions to the March 25, 2014 decree pursuant to Pa.O.C.R. 7.1. In an order filed on April 24, 2014, the

Orphans' Court denied those exceptions, and on May 23, 2014, GBH filed its

timely notice of appeal.[6]

On appeal, GBH raises four issues for this Court's consideration, which we

have reordered for purposes of our disposition:

1. Where a Trial Court has determined that income from certain charitable trusts bequeathed to a non-profit corporation operating a community hospital shall continue to be distributed to that same corporation/hospital after it has become part of a larger non-profit health care system and has committed to honor all restrictions of all gifts, is it an abuse of discretion or error of law for that Court to impose a Pour Over Endowment Trust and other limiting conditions that were not part of the initial bequests, including allowing payment only in the event of an operating loss?

2. Where Settlors of certain charitable trusts bequeathed trust income to a non-profit corporation operating a community hospital and that corporation still exists and continues to operate the same hospital, lawfully maintaining and carrying out the same purpose and mission, is it an abuse of discretion or error of law for a Court to apply the *cy pres* doctrine and use its application to impose conditions on the availability of the gifts that were not initially part of the gifts?

3. Where a Trial Court has determined that income from certain charitable trusts bequeathed to a non-profit corporation operating a community hospital shall continue to be distributed to that same corporation/hospital after it has become part of a larger non-profit health care system, is it an abuse of discretion and error of law for the Court to consider the operating revenue, expenses and income of the system as a whole and the breadth, scope and geographic reach of the health care system as a whole to impose conditions on the availability of the gifts that were not initially part of the gifts[?]

---

[6] "The 30 day appeal period pursuant to Pa.R.A.P. 903 from such final orders begins to run from the date of entry of an order disposing of exceptions …." Pa.O.C.R. 7.1 (explanatory note).

4. Where the Attorney General had no objection to the underlying transaction and a non-profit corporation has expressly committed to the Attorney General and to the Court to honor the terms and conditions of all endowments and/or restricted funds, is it an abuse of discretion for the Court to additionally mandate that the corporation amend its articles and bylaws to reflect its commitment to use the restricted funds locally, and to submit to additional review by the Attorney General beyond the Attorney General's normal monitoring of charitable trusts in the ordinary course, as *parens patriae*?

GBH's Brief at 6-7.[7]

"When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." **In re Estate of Whitley**, 50 A.3d 203, 206 (Pa. Super. 2012) (citation omitted). Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse the Orphans' Court's credibility determinations absent an abuse of discretion. **Id**. "However, we are not constrained to give the same deference to any resulting legal conclusions." **Id**. at 207 (citations omitted). "The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." **Id**. (citation omitted).

Moreover, when interpreting a trust agreement, the intent of the settlor is paramount, and if that intent is not contrary to law, it must prevail.

---

[7] For purposes of our discussion, we have reordered Appellant's issues on appeal.

-11-

*Estate of Nesbitt*, 652 A.2d 855, 857 (Pa. Super. 1995). In order to ascertain the intent of the settlor, the court must examine the language of the document, the scheme of distribution, and the facts and circumstances existing at the creation of the trust. *Id*. "Furthermore, charitable trusts are favorites of the law because they are in relief of the public burden, and a gift, even for a specific charitable purpose, should be liberally construed whenever reasonably possible." *Id*. (internal citation omitted).

GBH first claims that the Orphans' Court abused its discretion in creating the Pour Over Endowment Trust and limiting conditions that were not part of the bequests where the intent of the settlors has not been compromised. We are constrained to agree.

The Restatement (Second) of Trusts § 399 has been adopted as the expression of the doctrine of *cy pres* in this Commonwealth, and it provides as follows:

> If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

Restatement (Second) of Trusts at Section 399. This language has been codified as follows:

**(a) General rule**.--Except as otherwise provided in subsection (b), if a particular charitable purpose becomes unlawful, impracticable or wasteful:

(1) the trust does not fail, in whole or in part;

(2) the trust property does not revert to the settlor or the settlor's successors in interest; and

(3) the court shall apply *cy pres* to fulfill as nearly as possible the settlor's charitable intention, whether it be general or specific.

20 Pa.C.S. § 7740.3.

"In practice, application of the doctrine of *cy pres* is imprecise but the endeavor is to find the institution that 'will most nearly approximate the intention of the donor.'" ***In re Estate of Elkins***, 32 A.3d 768, 778 (Pa. Super. 2011) (quoting ***In re Women's Homeopathic Hospital of Philadelphia***, 142 A.2d 292, 294 (Pa. 1958)). "The key is approximating the express direction of the testator as nearly as possible by transferring the funds to an institution that the decedent would have wished to receive the funds had the decedent been aware of the situation that occurred following his demise." ***Id***. "The only stricture is that the charity must be within the general donative scheme outlined by the testator." ***Id***. (citation omitted).

In ***Estate of Nesbitt***, a case with similar facts to the case at bar, Abram G. Nesbitt bequeathed $400,000.00 to the Second National Bank of Wilkes-Barre, as Trustee, to invest in and to pay the annual income from the corpus of the trust to the Nesbitt West Side Hospital. ***Estate of Nesbitt***,

652 A.2d at 856. These payments were to continue "so long as [the hospital] exists as a separate institution caring for the sick and injured." *Id*. The terms of the trust did not provide for any alternate gift or reversion. *Id*. In 1992, the hospital became an affiliate of the Wyoming Valley Health Care System, Inc. *Id*. In 1993, residual beneficiaries sought to cease the payments to the hospital from the trust and argued that the trust was no longer obligated to pay because of the hospital's change in identity. *Id*. However, the Orphans' Court found that the hospital continued in the same location it occupied prior to the merger, and that the hospital continued to exist as a separate facility, with its own name, management structure, and identity. *Id*. The merger agreement specified that trust payments in place for the benefit of the hospital would be used only for the hospital after the merger. *Id*.

This Court agreed with the Orphans' Court's conclusion that the hospital continued to exist as a "separate institution caring for the sick and injured." *Nesbitt*, at 858. "Furthermore, as the Orphans' Court pointed out, if at any time the trust fund income is not applied to Nesbitt Hospital, Appellants can seek relief on the basis that the trust provision has failed." *Id*. Nevertheless, we determined that: "At present, however, there is no evidence that the trust provision has failed; on the contrary, the purpose of the trust has been perpetuated by the merger of the hospitals." *Id*.

In the present appeal, we are faced with a similar scenario. The stated intent of the settlors of the trusts instructed that the trust funds were to go to the hospital, a fact noted by the Orphans' Court.[8] Nothing in the aforementioned trusts necessitates the utilization of the Orphans' Court's *cy pres* authority to create the pour over trust. Indeed, the funds are currently going to GBH, and there is no evidence that money is being diverted or that the intent of the trusts is being thwarted. This was precisely the position taken by the Attorney General in her capacity as *parens patriae*.

We, thus, conclude that the creation of the pour over trust is an abuse of discretion and unnecessary. Moreover, we discern no basis upon which to find that the Attorney General's position was in error. Because GBH is utilizing the trust funds in accordance with the settlors' intent, the doctrine of *cy pres* does not apply. **In re Elkins Estate**, 32 A.3d at 778. There is no need for judicial intervention as none of the trusts has failed and none of the settlors' intentions has become impracticable or impossible, which would trigger the application of the doctrine of *cy pres*. 20 Pa.C.S. § 7740.3. Therefore, we conclude the Orphans' Court abused its discretion and erred in applying the doctrine of *cy pres* and creating the pour over trust.

---

[8] **See** Findings of Fact, 3/25/14, at ¶¶ 33, 35, 39, 42, 45, 48, 51, 54, 58, 61, 64, 67, 70, and 73 (wherein the Orphans' Court describes the gifts and quotes from the Titman Trust, McNinch Trust, Learn Trust, Sneidman Trust, Barger Trust, Hazel W. Shoemaker Trust, Grover C. Shoemaker Trust, Wolfe Trust, Mensinger Trust, J. Low Trust, A. Low Trust, Brown Trust, E. Elwell Trust, and S. Elwell Trust).

GBH's second issue is inextricably related to the first issue. In the second issue on appeal, GBH claims that the Orphans' Court abused its discretion in applying the doctrine of *cy pres* to place conditions on the availability of the trust funds. Here, GBH is specifically challenging the Orphans' Court adding the requirement that use of the trust monies was conditioned on the hospital operating at a loss. GBH's Brief at 23. In its order, the Orphans' Court required the creation of an accounting system using a pour over trust. Order, 4/24/14, at ¶ 2.

As we discussed above, nothing in the record supports the application of *cy pres* or necessitated the Orphans' Court's intervention and the creation of a pour over trust. Moreover, there is nothing in the trust documents that restricted the gifts to the hospital on the condition that it operated at a loss or conditioned the gifts on the hospital's fiscal position or solvency. As such, we agree with GBH that the Orphans' Court erred and abused its discretion in utilizing the doctrine of *cy pres* to create a pour over trust and in adding conditions on GBH's use of the trust funds.

In its third issue GBH claims the Orphans' Court abused its discretion or committed an error of law when the court ordered that the operating revenue, operating expenses and income of the system as a whole, and the breadth, scope and geographic reach of the health care system as a whole, were to be considered when it imposed conditions on the availability of the

funds. GBH's Brief at 7, 38-40. Because we have concluded that the Orphans' Court erred in applying the doctrine of *cy pres* and intervening in the distribution of the trust funds to GBH by requiring GBH to operate at a loss in order to receive funding from the trusts, we agree with GBH that the size, scope, and operating expenditures of GHSF are not relevant, nor is there a need for GHSF to make such disclosures in this matter. Thus, it was error for the Orphans' Court to mandate this requirement relating to GHSF.[9]

While we have found that the Orphans' Court erred with respect to GBH's first three issues, we discern no error or abuse of discretion in that part of the order that directed GBH to amend its articles of incorporation to include the following language:

> "[E]xcept for funds restricted for use at or by Geisinger-Bloomsburg Hospital, which shall be expended solely in connection with the operation of the Geisinger-Bloomsburg Hospital in a manner consistent with the intent of the Donors and in accordance with any explicit instructions governing the application thereof, and in further accordance with applicable orders of court; ..."

---

[9] The Orphans' Court's overarching concern and the scenario it sought to forestall is a situation where: 1) if GBH has operational surplus revenue; 2) GBH would not "need" monies from the trust; and 3) GBH could then expend trust funds on other facilities within the GHSF corporate entity. Findings of Fact, 3/25/14, at ¶¶ 95-102; Conclusions of Law, 3/25/14, at ¶¶ 15-17; Orphans' Court Opinion, 6/2/14, at 2-7. While such a scenario is possible, at this point, it remains purely speculative because there is no indication that trust funds have been expended beyond GBH. Moreover, in our discussion of GBH's final issue, we recognize the effort of the Orphans' Court to assure that such "funneling" of monies away from GBH and the Bloomsburg community does not occur in the future.

Order and Decree, 3/25/14, at ¶4.

GBH argues "[t]hat the Trust funds are being used locally can indeed be adequately assured through the Attorney General's usual monitoring of GBH's use of restricted funds consistent with its normal *parens patriae* functions, and there is no need for GBH to amend its articles and bylaws or submit to review beyond the normal course." GBH's Brief at 38. Despite GBH's protest, we point out that the language at issue tracks the recommendation made by the Attorney General. Attorney General's Statement of Position, 3/15/13, at ¶12. Thus, this is the "normal course" of oversight that the Attorney General exercises in its monitoring of charitable trusts.

After review, we discern no error in the inclusion of said language as it follows the recommendation made by the Attorney General in her capacity as *parens patriae* over charitable trusts. The language is narrowly tailored to assure that trust funds are utilized for the benefit of GBH consistent with the intent of the trusts' settlors.

For the reasons set forth above, we reverse the March 25, 2014 decree, with the exception of paragraph four. Paragraph four of the March 25, 2014 decree, which directed GBH to amend its articles of incorporation, is hereby affirmed.

March 25, 2014 decree affirmed in part and reversed in part in accordance with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/2015