J-S23001-18

2018 PA Super 138

| | | |
|---|---|---|
| IN RE:TRUST CREATED UNDER THE | : | IN THE SUPERIOR COURT OF |
| WILL OF WILLIAM J. COHEN DATED | : | PENNSYLVANIA |
| OCTOBER 18, 1946  IN RE:TRUST | : | |
| UNDER AGREEMENT OF WILLIAM J. | : | |
| COHEN DATED FEBRUARY 24, 1947 | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: BIBLE PRESBYTERIAN | : | |
| CHURCH OF CHESTER | : | No. 2887 EDA 2017 |

Appeal from the Order Entered August 9, 2017
In the Court of Common Pleas of Delaware County Orphans' Court at
No(s):  0274-2017

BEFORE:   SHOGAN, J., NICHOLS, J., and STEVENS*, P.J.E.

OPINION BY SHOGAN, J.:                                    **FILED MAY 25, 2018**

Bible Presbyterian Church of Chester ("Bible Church") appeals from the

order entered August 9, 2017, in the Court of Common Pleas of Delaware

County, overruling its objections to the *cy pres* petition of Crozer-Chester

Medical Center, Inc. ("CCMC, Inc.").  We affirm.

The orphans' court provided the following summary of this case:

> On August 7, 2017, this court convened a hearing to dispose
> of a *cy pres* petition arising from a Trust created under the
> residuary clause of the Will of William J. Cohen dated October 18,
> 1946 and of the Trust Agreement of February 24, 1947 ["Cohen
> Trust"].  The designated Trust beneficiaries (Third Presbyterian
> Church of Chester, [Bible Church] (also located in Chester),
> Church of the Open Door (located on York Road in Philadelphia)
> and Chester Hospital) were to split equally the net income derived
> from the residue of the decedent's estate.
>
> The matter came before this court based upon a Petition of
> CCMC, Inc. formerly known as Crozer-Chester Medical Center
> [s]eeking [r]elief [p]ursuant to the Doctrine of *Cy Pres*.  By way

_____

* Former Justice specially assigned to the Superior Court.

> of background, CCMC, Inc. was the late operator of Crozer-Chester Medical Center which, in turn, based upon an adjudication of the court back in 1964, succeeded to the interests of Chester Hospital.  Over the intervening years, CCMC, Inc., acquired interests in other medical facilities around Delaware County.  Most recently, effective on or about July 1, 2016, a sale of the assets of CCMC, Inc., to a for-profit entity, Prospect Health, resulted in a reincarnation of a non-profit, Crozer Chester Foundation into Crozer Keystone Community Foundation ("CKCF") which is now using the former's tax identification number.  At the same time, CKCF absorbed Delaware County Memorial Hospital Foundation.  CKCF was identified as the principal recipient of the proceeds from the asset sale.
>
> * * *
>
> The issue presented for disposition derives from the changed circumstances.  Chester Hospital, one of this trust's original beneficiaries has long been in the rearview mirror.  But the vision of the deceased was carried forward through CCMC, Inc.  The *cy pres* petition seeks to allow CKCF to continue the legacy of Chester Hospital and CCMC, Inc.
>
> * * *
>
> However, while two of the three other beneficiaries of the Cohen Trust posed no objection to the *cy pres* petition, one of the other Trust beneficiaries, [Bible Church], contested the proposed application of the *cy pres* doctrine which would permit the change of beneficiary to the newly created entity, CKCF.  Instead, [Bible Church] asserted that the termination of the eligibility of CCMC, Inc. to receive the largesse from the Trust constituted a lapse thereby requiring the Trust to divide the one-quarter share originally allocable to Chester Hospital, among the other three entities.

Orphans' Court Opinion, 11/20/17, at unnumbered 1, 2.  The orphans' court overruled Bible Church's objections and granted the *cy pres* petition, thereby allowing CKCF to receive the one-quarter share of net income originally allocated to Chester Hospital in 1946 and 1947 and distributed to CCMC, Inc.

- 2 -

since 1964. Bible Church appealed. The orphans' court and Bible Church complied with Pa.R.A.P. 1925.

Bible Church states the questions involved as follows:

1) May the court award a residuary share in trusts to an independent charitable corporation with different functions rather than to the remaining residuary beneficiaries when the charity originally named as one of four residuary beneficiaries no longer qualifies to receive such funds?

2) Did the Trial Court err in granting the Petition Seeking Relief Under the Doctrine of Cy Pres and modifying the Trust to provide that the bequest to Chester Hospital now may go to [CKCF] rather than the remaining beneficiaries[?]

Bible Church's Brief at 8.[1]

Well-settled standards guide our review. "When reviewing a decree entered by the [o]rphans' [c]ourt, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re Shoemaker*, 115 A.3d 347, 354 (Pa. Super. 2015) (quoting *In re Estate of Whitley*, 50 A.3d 203, 206 (Pa. Super. 2012) (citation omitted)). Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse the orphans' court's credibility determinations absent an abuse of discretion. *Id.* at 354–355 (citation omitted). "However, we are not constrained to give the same deference to any resulting legal conclusions." *Id.* at 355 (quoting

_____

[1] We remind counsel that chapter twenty-one of our appellate rules, which governs appellate briefs, requires that "the argument shall be divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a).

*Whitley*, 50 A.3d at 207 (citations omitted)). "The [o]rphans' [c]ourt decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *Id.* (quoting *Whitley*, 50 A.3d at 207 (citation omitted)).

Bible Church first argues that the orphans' court abused its discretion by awarding Chester Hospital's residuary share of the Cohen Trust to an independent charitable corporation with non-hospital functions. Bible Church's Brief at 13. Specifically, Bible Church contends that, because Chester Hospital no longer exists and CCMC, Inc. is an ineligible beneficiary, the residual one-quarter share of the Cohen Trust should have been distributed equally to the three remaining beneficiaries. *Id.* at 15. In support of its position, Bible Church relies on Pennsylvania's Decedents, Estates and Fiduciaries ("DEF") Code, 20 Pa.C.S. §§ 101–8815, specifically, Section 2514(9), (10), and (11).[2] Bible Church further argues that Mr. Cohen's

---

[2] Those provisions read as follows:

§ 2514. Rules of interpretation

In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

* * *

**(9) Lapsed and void devises and legacies; substitution of issue.**--A devise or bequest to a child or other issue of the testator or to his brother or sister or to a child of his brother or sister

purposes are not frustrated by the fact that Chester Hospital no longer exists.

Bible Church's Brief at 16.  According to Bible Church:

> what is clear from the Will and Trust under Agreement is that Cohen intended the gift to go to four specific beneficiaries.  It is logical, therefore, and required by Section 2514, that if one of the beneficiaries is no longer able to accept the gift the gift should be distributed to the remaining beneficiaries equally.

---

> whether designated by name or as one of a class shall not lapse if the beneficiary shall fail to survive the testator and shall leave issue surviving the testator but shall pass to such surviving issue who shall take per stirpes the share which their deceased ancestor would have taken had he survived the testator: Provided, That such a devise or bequest to a brother or sister or to the child of a brother or sister shall lapse to the extent to which it will pass to the testator's spouse or issue as a part of the residuary estate or under the intestate laws.
>
> **(10) Lapsed and void devises and legacies; shares not in residue.**--A devise or bequest not being part of the residuary estate which shall fail or be void because the beneficiary fails to survive the testator or because it is contrary to law or otherwise incapable of taking effect or which has been revoked by the testator or is undisposed of or is released or disclaimed by the beneficiary, if it shall not pass to the issue of the beneficiary under the provisions of paragraph (9) hereof, and if the disposition thereof shall not be otherwise expressly provided for by law, shall be included in the residuary devise or bequest, if any, contained in the will.
>
> **(11) Lapsed and void devises and legacies; shares in residue.**--When a devise or bequest as described in paragraph (10) hereof shall be included in a residuary clause of the will and shall not be available to the issue of the devisee or legatee under the provisions of paragraph (9) hereof, and if the disposition shall not be otherwise expressly provided for by law, it shall pass to the other residuary devisees or legatees, if any there be, in proportion to their respective shares or interests in the residue.

20 Pa.C.S. § 2514(9)–(11).

*Id.* at 17.

In response, CCMC, Inc. contends that Section 2514:

could not be clearer in its mandate that none of the three [sub]sections applies to the *Cohen* [Trust]. 20 [Pa.C.S.] §2514(9) applies only to individuals; §2514(10) applies to bequests which are not part of the residuary estate; and §2514(11) applies where the disposition in question shall not be otherwise expressly provided for by law. In the *Cohen* [Trust], the relevant beneficiaries are charitable institutions, not individuals, and therefore the distribution scheme described in §2514(9) does not apply. Likewise, the *Cohen* [Trust] bequests are residuary, and therefore are not subject to §2514(10). Finally, the requirements of §2514(11) are also not applicable here, because the *Cohen* Trust bequests are already otherwise expressly provided for by law, namely 20 [Pa.C.S.] § 7740.3, which articulates the doctrine of *cy pres*.

CCMC, Inc.'s Brief at 10.

Agreeing with CCMC, Inc., the orphans' court rejected Bible Church's reliance on Section 2514:

The cited language offers no grounds upon which the objection can be sustained.

As to the first subsection, the statute is specifically limited to individuals—no reference is made to an entity that lacks corporeal existence. The second subsection expressly concerns itself with "A devise or bequest not being part of the residuary estate. . ." By its explicit terms, this subsection does not apply to the situation where, as here, the funds sought derive from a residuary beneficiary's portion. In contrast, the last subsection's application to residuary beneficiaries is unquestionable. However, the statute (like the previously referenced subsections) contains verbiage ("... and if the disposition shall not be otherwise expressly provided for by law, …") which subjugates these subsections to the *cy pres* statutory provision. [Bible Church's] argument finds no foundation in the law it presented.

Orphans' Court Opinion, 11/20/17, at unnumbered 3.

We agree with the orphans' court that Bible Church's reliance on Subsections 2514(9)–(11) is misplaced. In the context of a devise or a bequest, Section 2514 identifies the meaning of "heirs" and "next of kin" as follows:

> A devise or bequest of real or personal estate, whether directly or in trust, to the testator's or another designated person's "heirs" or "next of kin" or "relatives" or "family" or to "the persons thereunto entitled under the intestate laws" or to persons described by words of similar import, **shall mean those persons, including the spouse, who would take under the intestate laws** if the testator or other designated person were to die intestate at the time when such class is to be ascertained, a resident of the Commonwealth, and owning the estate so devised or bequeathed. . . .

20 Pa.C.S. § 2514(4) (emphasis supplied). Bible Church's logic would prevail if the beneficiaries were Mr. Cohen's heirs and next of kin, because a charitable organization is not a person who would take under the intestate laws of Pennsylvania. *See* 20 Pa.C.S. § 2103 (setting forth order of intestate succession to other than surviving spouse). Therefore, contrary to Bible Church's interpretation, Subection 2514(9) does not encompass residuary bequests or devises to charitable entities.

Logically, Subsection (10) does not apply because the Cohen Trust benefits charitable organizations and is funded by residuary assets. 20 Pa.C.S. § 2514(10). Similarly, Subsection (11) does not apply because it controls only where other laws do not govern the disposition. 20 Pa.C.S. § 2514(11). Section 2515 of the DEF Code deals specifically with "[a] devise or bequest in a will . . . made to the trustee of a trust," as in the case at hand. 20 Pa.C.S.

§ 2515. Additionally, as discussed below, Section 7740.3 of the DEF Code governs property given in trust for a charitable purpose. 20 Pa.C.S. § 7740.3. Because Section 2514 does not apply to the case before us, Bible Church's first issue does not warrant relief.

Next, Bible Church argues that the orphans' court abused its discretion by applying the doctrine of *cy pres* and awarding CKCF the one-quarter share of net income originally allocated to Chester Hospital. Bible Church's Brief at 17. According to Bible Church, because the three church beneficiaries should receive Chester Hospital's one-quarter share pursuant to Section 2514, the *cy pres* doctrine does not apply to this case. *Id.* at 18. Alternatively, Bible Church argues that, if a gift to a hospital was a necessary component of the Cohen Trust, "the doctrine of *cy pres* would require that the substitute beneficiary must be a non-profit *hospital*, not merely a health-related organization" like CKCF. *Id.* (emphasis in original). As discussed above, Bible Church's premise that Section 2514 governs the disposition of the residuary share is incorrect. Its claim of trial court error in applying the *cy pres* doctrine also is incorrect.

Pennsylvania has adopted the Restatement (Second) of Trusts § 399 as the expression of the doctrine of *cy pres* in the Commonwealth. Section 399 provides as follows:

> If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable

purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

Restatement (Second) of Trusts at Section 399. The Pennsylvania Legislature has codified this language as follows:

**(a) General rule.**—Except as otherwise provided in subsection (b), if a particular charitable purpose becomes unlawful, impracticable or wasteful:

(1) the trust does not fail, in whole or in part;

(2) the trust property does not revert to the settlor or the settlor's successors in interest; and

(3) the court shall apply *cy pres* to fulfill as nearly as possible the settlor's charitable intention, whether it be general or specific.

20 Pa.C.S. § 7740.3. **See also In re Farrow**, 602 A.2d 1346, 1347 (Pa. Super. 1992) ("[I]f the charitable purpose for which an interest is conveyed shall be or become indefinite or impossible or impractical of fulfillment, ... the court shall order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor....").

"In practice, application of the doctrine of *cy pres* is imprecise but the endeavor is to find the institution that 'will most nearly approximate the intention of the donor.'" **Shoemaker**, 115 A.3d at 355 (quoting **In re Estate of Elkins**, 32 A.3d 768, 778 (Pa. Super. 2011)). "The key is approximating the express direction of the testator as nearly as possible by transferring the funds to an institution that the decedent would have wished to receive the

funds had the decedent been aware of the situation that occurred following his demise." *Id.* (quoting *Elkins*, 32 A.3d at 778); *accord In re Women's Homeopathic Hospital of Philadelphia*, 142 A.2d 292, 294 (Pa. 1958) ("[O]nce the applicability of the cy pres doctrine is indicated, the problem forthwith becomes one of approximating the testator's express direction as nearly as possible and without doing violence thereto." (citation omitted)). "The only stricture is that the charity must be within the general donative scheme outlined by the testator." *Shoemaker*, 115 A.3d at 355 (quoting *Elkins*, 32 A.3d at 778 (citation omitted)). "[T]his Court employs a highly deferential standard of review of the orphans' court's determination as to whom should be accorded *cy pres* beneficiary status." *Elkins*, 32 A.3d at 777.

Bible Church's position that CKCF is not the appropriate *cy pres* beneficiary of the Cohen Trust rests upon a simple syllogism: Mr. Cohen intended to benefit a hospital when he created the Cohen Trust, and "CKCF is *not* a hospital and is not even like a hospital." Bible Church's Brief at 19 (emphasis in original). Bible Church also submits that "there are at least two non-profit hospitals serving the Delaware County community—Riddle Memorial Hospital and Mercy Fitzgerald Hospital." *Id.* (citing N.T., 8/7/17, at 21, 38). Therefore, Bible Church concludes, CKCF cannot be the *cy pres* beneficiary.

We acknowledge that Mr. Cohen expressly intended to benefit a hospital located in Chester; however, that is not the inquiry before us. At issue is the

question: Upon what institution would Mr. Cohen have bestowed the benefit of his benevolence had he known that Chester Hospital failed in its charitable purpose? *Elkins*, 32 A.3d at 778. To answer that question, we must examine Mr. Cohen's intent in disposing of his assets.

When interpreting a trust agreement, the intent of the settlor is paramount, and if that intent is not contrary to law, it must prevail. *Shoemaker*, 115 A.3d at 355 (quoting *Estate of Nesbitt*, 652 A.2d 855, 857 (Pa. Super. 1995)). In order to ascertain the intent of the settlor, the court must examine: "(a) all the language contained in the four corners of the instrument[;] (b) the distribution scheme[;] (c) the circumstances surrounding the testator or settlor at the time the will was made or the trust was created[;] and (d) the existing facts." *In re Scheidmantel*, 868 A.2d 464, 488 (Pa. Super. 2005) (internal punctuation and citations omitted). "Furthermore, charitable trusts are favorites of the law because they are in relief of the public burden, and a gift, even for a specific charitable purpose, should be liberally construed whenever reasonably possible." *Nesbitt*, 652 A.2d at 857 (citations omitted).

Upon consideration of the pleadings and evidence to determine Mr. Cohen's intent, the orphans' court entered the following relevant findings of fact and conclusions of law:

> 5. That the Attorney General of the Commonwealth of Pennsylvania has received notice and has no objection to [CCMC, Inc.'s] request;

* * *

7. That by reason of the acquisition of Crozer-Keystone Health System, including CCMC, Inc., by Prospect Medical Holdings, Inc., a for-profit company, effective July 1, 2016, CCMC, Inc. is no longer able to be the beneficiary of the [Cohen] Trust, and [CCMC, Inc.] will make the most beneficial use of the [Cohen] Trust assets, and the use which is most reflective of [Mr. Cohen's] intent in creating the [Cohen] Trust, is to have them used by and for the newly formed Crozer-Keystone Community Foundation ("CKCF"), an independent 501(c)(3) corporation;

8. That the doctrine of Cy Pres applies, and, in accordance with the terms of 20 Pa.C.S.A. §7740.3(a)(3), CKCF is the appropriate substitute beneficiary for CCMC;

9. That the Anti-Lapse provisions of the Pennsylvania [Decedents, Estates and Fiduciaries] Code (20 Pa.C.S.A. §2514(10) & (11)), as asserted by [Bible Church], are not applicable in the extant circumst[an]ces.

10. That CKCF's mission supports healthcare education, healthcare-related social services and healthcare initiatives and programs in Delaware County and particularly in the City of Chester;

11. That such use of the [Cohen] Trust assets will further [Mr. Cohen's] intent of supporting the health and well-being of the residents of Delaware County, and is consistent with the mission of CKCF;

12. That the Trustee is in agreement with the transfer of [Cohen] Trust assets to CKCF;

13. That the Objection posed by [Bible Church] lacks legal or factual basis and is therefore OVERRULED;

14. And that the Trustee of the Trust Under Will of October 18, 1946 and of the Trust Under Agreement of February 24, [1]947 is directed to distribute the [Cohen T]rust assets previously distributable to CCMC, Inc., that is, one-quarter of income, including any accrued income, as of and following July 1, 2016 to [CKCF].

Final Decree, 8/9/17, at 2. The orphans' court credited the unchallenged

testimony of CCMC, Inc.'s president:

> The court benefited from the credibly presented testimony of
> Ms. Frances Mary Sheehan. She explained the evolution of
> Chester Hospital through CCMC, Inc. and its related institutions.
> Her narrative then offered background on CKCF. She described
> the service area of the foundation as, "…Delaware County, and in
> particular, the Chester community." When questioned about
> CKCF's mission, Ms. Sheehan responded:
>
>> . . . I would say broadly our mission is to
>> improve the health of the residents of Delaware
>> County. Specifically, our mission is to obviously honor
>> the original Orphans' Court Order from back in June
>> of 2016. And I can read that into the record, which is
>> to build a better community through the support of
>> healthcare education, healthcare relate[d] social
>> service, and healthcare initiatives and programs in
>> Delaware County.
>
> N.T. 8/1/17 at 8.
>
> * * *
>
> Ms. Sheehan offered a clear vision of CKCF's strategic plan to
> focus on ". . . addressing the needs of our most vulnerable
> citizens . . . the large majority of whom live in the city of Chester
> and its immediate environs." Moreover, her testimony reflected a
> comprehensive familiarity with federal, state and other health-
> related programs that offer assistance to those in need in the local
> community.

Orphans' Court Opinion, 11/20/17, at unnumbered 1–2.

Applying our deferential standard of review, we discern no abuse of the

orphans' court's discretion in crediting Ms. Sheehan's testimony.

*Shoemaker*, 115 A.3d at 354–355. Applying the factors for determining a

donor's intent, we conclude the orphans' court's determination that CKCF is

the appropriate *cy pres* beneficiary rests upon solid ground. First, the language contained in the four corners of the trust documents—Mr. Cohen's will and his Trust Under Agreement—names as beneficiaries two churches and a hospital in Chester and a church in Philadelphia. Will, 10/18/46, at ¶ 5; Trust Under Agreement, 2/24/47, at ¶ 4. The documents do not explain or describe Mr. Cohen's donative intent, and no evidence was offered for that purpose. However, the Cohen Trust language does not include any restrictions or conditions on use of the charitable bequests to or by the named beneficiaries. Mindful that charitable bequests are favored, **Nesbitt**, we draw a reasonable inference from the Cohen Trust language that Mr. Cohen intended to provide for the spiritual and physical well-being of the Chester community and the spiritual well-being of a particular Philadelphia parish.

Second, the Cohen Trust distribution scheme provides that the four beneficiaries would equally share the net income. Employing the doctrine of *cy pres* to distribute Chester Hospital's share to a substitute beneficiary supports this scheme. In contrast, Bible Church's narrow approach to interpreting the extent of Mr. Cohen's donative intent as applying only to the four named beneficiaries undermines this scheme. Bible Church's approach results in the failed gift passing to the remaining three beneficiaries, ignores the medical component of the Cohen Trust, and imposes a condition not otherwise expressed in the trust documents. **Compare Nesbitt**, 652 A.2d 855 (continuing payment of charitable bequest to hospital "so long as [the

hospital] exists as a separate institution caring for the sick and injured"); *In re Pruner's Estate*, 162 A.2d 626, 630 (Pa. 1960) ("[T]he doctrine of *cy pres* has no application in the instant case, since testator expressly provided for the reverter upon the failure of the trustees to use the land as a Home."); *In re Leffmann's Trust*, 105 A.2d 115 (Pa. 1954) (affirming distribution of income share granted to hospital equally between remaining beneficiaries where hospital ceased to have "separate corporate existence" required by trust language).

Third, the record reveals little about the circumstances surrounding the testator at the time the Cohen Trust was created. Apparently, Mr. Cohen owned property in Chester and created a trust to benefit two local churches, Chester Hospital, and a church in Philadelphia. Petition of CCMC, Inc. Seeking Relief Pursuant to Doctrine of Cy Pres, 5/30/17, at Exhibits A and B.

Finally, the existing facts of record include the ineligibility of CCMC, Inc. to continue as a beneficiary and the creation of CKCF as a not-for-profit charitable organization engaged in the funding and provision of health-related services. Petition of CCMC, Inc. Seeking Relief Pursuant to Doctrine of Cy Pres, 5/30/17, at ¶ 8; N.T., 8/7/17, at 6–7. CKCF's past and current activities include the following:

> fundraising which allow[s] for breast cancer screenings, predominantly in Chester but also elsewhere in Delaware County; the allocation of funds to support the financial needs of cancer patients, those in need of home health services or hospice care; operation of the County's Women's Infants and Children Program (intensive nutrition for mothers, infants and children up to age 4)

also offered mainly in Chester and the Nurse Family Partnership Program (health services to pregnant women and babies); drug and alcohol addiction prevention programming; Healthy Start program (home visiting program to assist low income women, babies and toddlers); fundraising efforts to underwrite other programs to support healthcare services to the needy residents in Chester and its vicinity; as well as other programs. Many of these programs operate from a physical facility located in Chester.

Orphans' Court Opinion, 11/20/17, at unnumbered 2; N.T., 8/7/17, at 8–11. Additionally, the Attorney General does not object to naming CKCF as a substitute beneficiary. Petition of CCMC, Inc. Seeking Relief Pursuant to Doctrine of Cy Pres, 5/30/17, at Exhibit F. As for the two non-profit hospitals that Bible Church proffers as substitute beneficiaries, while they are in Delaware County, neither of them is in the City of Chester; CKCF, on the other hand, is located in the City of Chester. N.T., 8/7/17, at 12, 21.

Reiterating that the testator's intent is paramount and charitable donations are favored, we conclude that the relevant factors support the orphans' court's interpretation of Mr. Cohen's bequest to Chester Hospital as based on a desire to support the health and welfare of the Chester community. The orphans' court considered the significant number of health-related programs and services supported by CKCF for Chester mothers, infants, toddlers, drug and alcohol addicts, low-income residents, and cancer patients, along with other relevant factors to determine with care what institution Mr. Cohen would have chosen had he been aware of the present situation. *Accord Farrow*, 602 A.2d at 1348 ("[I]n several cases in which the designated charity was defunct or ambiguously labelled in a testamentary or

trust document, and the court applied the *cy pres* doctrine, the lapsed share did not go to any of the named beneficiaries, but to a charity not mentioned in the will or trust but which most nearly approximated the intention of the donor.").

Furthermore, mindful that we employ "a highly deferential standard of review of the orphans' court's determination as to whom should be accorded *cy pres* beneficiary status," **Elkins**, 32 A.3d at 778 (citation omitted), we discern no abuse of the orphans' court's discretion in determining that CKCF is within the general donative scheme outlined by Mr. Cohen. CKCF performs a variety of functions designed to support healthcare education, healthcare-related social services, and healthcare initiatives to promote the physical well-being of Chester residents. The fact that CKCF is not a hospital does not mandate reversal of the orphans' court when one considers that Mr. Cohen did not impose a condition on his bequest as to how Chester Hospital was to spend the funds. This omission supports a logical inference that Mr. Cohen was primarily concerned with the provision of medical services rather than the functioning and maintenance of the hospital itself. **Cf. Elkins**, 32 A.3d at 780 ("Mr. Elkins specifically delineated that his money not be used to pay for any hospital structure. This language supports the orphans' court's conclusion that Mr. Elkins was primarily concerned with the provision of medical services rather than the hospital building itself.").

Having thoroughly reviewed the certified record, the parties' arguments, and the orphans' court's analysis, we conclude that the orphans' court did not override or misapply the law or exercise its judgment in a manifestly unreasonable manner and that its ruling did not result from partiality, prejudice, bias, or ill will. *Elkins*, 32 A.3d at 781. Finding no abuse of discretion, we affirm the order of the orphans' court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/18