J-A13008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TRUST UNDER DEED OF WALTER R. GARRISON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MARK R. GARRISON, CHRISTOPHER GARRISON, LINDSEY GARRISON, LIZA GARRISON, AND BRITTANY GARRISON | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1429 EDA 2020 |

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 1992-X1519

| | | |
|---|---|---|
| TRUST UNDER DEED OF WALTER R. GARRISON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MARK R. GARRISON, CHRISTOPHER GARRISON, LINDSEY GARRISON, LIZA GARRISON, AND BRITTANY GARRISON | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1430 EDA 2020 |

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 1992-X1518

| | | |
|---|---|---|
| TRUST UNDER DEED OF WALTER R. GARRISON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MARK R. GARRISON, CHRISTOPHER GARRISON, LINDSEY GARRISON, LIZA GARRISON, AND BRITTANY GARRISON | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1431 EDA 2020 |

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 1992-X1509

| | | |
|---|---|---|
| TRUST UNDER DEED OF WALTER R. GARRISON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

:
:
:
APPEAL OF: BARTON J. WINOKUR,  :
EXECUTOR OF THE ESTATE OF  :
WALTER R. GARRISON, DECEASED  :
:
:  No. 1461 EDA 2020

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 1992-X1509,
No. 1992-X1518, No. 1992-X1519

TRUST UNDER DEED OF WALTER R.  :  IN THE SUPERIOR COURT OF
GARRISON  :  PENNSYLVANIA
:
:
APPEAL OF: BARTON J. WINOKUR,  :
EXECUTOR OF THE ESTATE OF  :
WALTER R. GARRISON, DECEASED  :
:
:  No. 1498 EDA 2020

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 1992-X1509,
No. 1992-X1518, No. 1992-X1519

TRUST UNDER DEED OF WALTER R.  :  IN THE SUPERIOR COURT OF
GARRISON  :  PENNSYLVANIA
:
:
APPEAL OF: BARTON J. WINOKUR,  :
EXECUTOR OF THE ESTATE OF  :
WALTER R. GARRISON, DECEASED  :
:
:  No. 1562 EDA 2020

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 1992-X1509,
No. 1992-X1518, No. 1992-X1519

J-A13008-21

BEFORE:   BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 27, 2021**

Mark R. Garrison, Christopher Garrison, Lindsey Garrison, Liza Garrison, and Brittany Garrison (collectively "Appellants" or "Beneficiaries") appeal from the order entered on June 16, 2020, by the Montgomery County orphans' court, which denied their petition for declaratory judgment and motion for judgment on the pleadings.  Barton J. Winokur, executor of the Estate of Walter R. Garrison, deceased ("Executor"), filed cross-appeals of the orphans' court's June 16, 2020 order, which declared *sua sponte* that the Estate of Walter R. Garrison, deceased, does not have an ongoing interest in the trusts at issue in this matter and is, therefore, not a proper participant to these proceedings.[1]  After careful review, we affirm.

The orphans' court provided the following relevant factual and procedural background of this matter in its June 16, 2020 opinion:

On July 19, 2019, Mark R. Garrison ("Mark" or "Petitioner") filed a petition for declaratory judgment to determine the validity of modifications to three irrevocable trusts created for Mark's benefit by Mark's father, Walter R. Garrison ("Walter" or "Settlor"):  the Trust under Deed of Walter R. Garrison, dated December 21, 1967, Sprinkle Trust #1 f/b/o Mark R. Garrison [No. 1992-

---

[*] Former Justice specially assigned to the Superior Court.

[1] By *per curiam* order dated September 23, 2020, this Court consolidated *sua sponte* the appeals at Nos. 1429 EDA 2020, 1430 EDA 2020, 1431 EDA 2020, 1461 EDA 2020, 1498 EDA 2020, and 1562 EDA 2020.  Mark R. Garrison, Christopher Garrison, Lindsey Garrison, Liza Garrison, and Brittany Garrison were designated as Appellants/Cross-Appellees, and Barton J. Winokur, executor of the Estate of Walter R. Garrison, deceased, was designated as Appellee/Cross-Appellant.  ***See*** *Per Curiam* Order, 9/23/20 (single page).

- 3 -

X1509]; the Trust under Deed of Walter R. Garrison, dated October 9, 1970, Sprinkle Trust #2 f/b/o Mark R. Garrison [No. 1992-X1518]; and the Trust under Deed of Walter R. Garrison, dated June 18, 1973, Sprinkle Trust #3 f/b/o Mark R. Garrison [No. 1992-X1519] (respectively, "Sprinkle Trust #1[,"] "Sprinkle Trust #2[,"] and "Sprinkle Trust #3[,"] and collectively, "Trusts" or "Garrison Trusts"). The trust modifications, if valid, would allow … [B]eneficiaries to remove and replace the trustees at their discretion after Walter's death. Walter died [on] February 24, 2019.

The petition also asks the court to confirm the appointment of successor trustees, who were appointed by … [B]eneficiaries pursuant to the trust modifications.[2]

On November 8, 2019, Mark filed a motion for judgment on the pleadings [at Nos. 1992-X1519, 1992-X1518, and 1992-X1509,] seeking essentially the same relief, asserting that he is entitled to judgment as a matter of law, that the three agreements to modify [the T]rusts entered into between Settlor and … [B]eneficiaries [("Modification Agreements")] are enforceable, and that under the terms of the modifications, the successor trustees appointed after Walter's death should be confirmed.

…

Responsive pleadings, including answers with new matter, were filed to both the petition and the motion by Barton J. Winokur, Lawrence C. Karlson, Donald W. Garrison, and Michael J. Emmi[,] as co-trustees of one or more of the Trusts (the "Independent Trustees")[,] and by Barton J. Winokur, as executor of Walter's estate.

_____

2 On September 5, 2019, Mark's children, Christopher, Lindsay, Liza, and Brittany Garrison, as beneficiaries of the Trusts, as well as Walter's other four children, Jeffrey Garrison, Susan Garrison, Pam Phelan, and Heather Garrison, as contingent remainder beneficiaries of the Trusts, joined Mark's petition for declaratory judgment, pursuant to section 7540(A) of the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541. *See* 42 Pa.C.S. § 7540(A) ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration and no declaration shall prejudice the rights of persons not parties to the proceeding.").

Orphans' Court Order and Opinion ("OCOO"), 6/16/20, at 1-2 (unnecessary capitalization omitted).

The orphans' court determined that both the petition for declaratory judgment and the motion for judgment on the pleadings turned on the narrow issue of whether the Pennsylvania Supreme Court's holding in ***Trust under Agreement of Edward Winslow Taylor***, 164 A.3d 1147 (Pa. 2017), applies with respect to a purported modification of a trust made with the consent of the settlor as well as the beneficiaries, pursuant to 20 Pa.C.S. § 7740.1(a). ***See*** OCOO at 2-3. Thus, the orphans' court requested supplemental briefing from the parties on this issue. ***Id.*** at 2. The court subsequently concluded that "the Estate of Walter R. Garrison, deceased, does not have an ongoing interest in the Trusts and[,] therefore[,] the estate is not a proper participant to these proceedings." ***Id.*** at 3. Accordingly, the orphans' court did not consider the memoranda submitted on behalf of the estate in its analysis of the ***Taylor*** issue. ***Id.***

After consideration of the foregoing pleadings filed by all parties and Appellants' supplemental brief on the ***Taylor*** issue, the orphans' court issued an order dated June 16, 2020, which denied Appellants' petition for a declaratory judgment and the motion for judgment on the pleadings. ***Id.*** at 15.[3] The order specifically declared that "the Modification Agreements are

---

[3] The June 16, 2020 order was entered in the Montgomery County Court of Common Pleas Orphans' Court at docket nos. 1992-X1519, 1992-X1518, and 1992-X1509.

ineffective and invalid[] to the extent that they purport to grant … [B]eneficiaries the power to remove and replace … Independent Trustees[,]" that "[t]he removal of … Independent Trustees pursuant to the [Modification Agreements] is invalid, and the appointment of the successor co-trustees is a nullity." **Id.** The order further stated that the current Independent Trustees "remain as co-trustees of the [T]rusts for which each of them is a named trustee and may be removed and replaced pursuant only to the original terms of the Trusts or to proceedings in accordance with the requirements of 20 Pa.C.S. § 7766." **Id.**

On July 14, 2020, Appellants filed timely notices of appeal at docket nos. 1992-X1519, 1992-X1518, and 1992-X1509,[4, 5] followed by timely, court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal. On July 27, 2020, the Executor filed timely notices of cross-appeal, pursuant to Pa.R.A.P. 903(b), at each of the foregoing docket numbers, and he complied with the orphans' court's Rule 1925(b) order.

Due to inconsistencies in the lower court's dockets with respect to whether notice of the June 16, 2020 order was properly provided, this Court

---

[4] **See Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (determining that "the proper practice under Pa.R.A.P. 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket").

[5] We note that the June 16, 2020 order is appealable pursuant to Pa.R.A.P. 342(a), which provides that an appeal may be taken as of right from an orphans' court order "determining the validity of a will or trust[,]" or "determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship." Pa.R.A.P. 342(a)(2), (5).

issued a rule to show cause directing the Montgomery County prothonotary to provide the parties with Rule 236 notice of the orders from which Appellants appeal, and to indicate on the docket the date(s) on which such notice was given. *Per Curiam* Order, 9/25/20, at 1-2. **See** Pa.R.C.P. 236(a)(2) (providing that the prothonotary "shall immediately give written notice of the entry of … any other order or judgment to each party's attorney of record or, if unrepresented, to each party[,]" and that the notice shall include a copy of the order or judgment); Pa.R.C.P. 236(b) ("The prothonotary shall note in the docket the giving of the notice[.]"). **See also Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999) (determining that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"). The prothonotary failed to timely provide this Court with documentation reflecting that proper Rule 236 notice had been given.[6] Nevertheless, this Court discharged the rule, without prejudice for the merits panel to revisit the jurisdictional issue. *Per Curiam* Order, 11/12/20, at 1-2.

---

[6] We acknowledge that the Montgomery County orphans' court issued certificates of service, on October 23, 2020, in case nos. 1992-X1519, 1992-X1518, and 1992-X1509, indicating that it served "the attached document(s)" on "[a]ll counsel and unrepresented parties" by mail to the addresses noted on the record. Attached to each certificate was merely a copy of the corresponding docket, labeled "List of Record Documents Sent to All Counsel and Unrepresented Parties[.]" To the extent that the certificates of service were intended to constitute a response to the rule issued by this Court, we note that said responses were untimely and failed to provide any further clarification as to whether Rule 236 notice of the June 16, 2020 order was provided.

Hence, before we consider the merits of the parties' issues raised on appeal, we first determine whether this appeal is properly before us. "The appealability of an order goes directly to the jurisdiction of the Court asked to review the order." *Stahl v. Redcay*, 897 A.2d 478, 485 (Pa. Super. 2006) (internal brackets and citation omitted). Initially, we note that it is the prothonotary's docketing of the Rule 236 notice that triggers the commencement of the appeal period.

> Rule of Appellate Procedure 108(b) designates the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b). Our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." *Frazier*…, 735 A.2d [at] 115…. Where there is no indication on the docket that Rule 236(b) notice has been given, then the appeal period has not started to run. *Id.* … Our Supreme Court has expressly held that this is a bright-line rule, to be interpreted strictly. That the appealing party did indeed receive notice does not alter the rule that the 30-day appeal period is not triggered until the clerk makes a notation on the docket that notice of entry of the order has been given. *Id.*

*In re L.M.*, 923 A.2d 505, 508-09 (Pa. Super. 2007).

Our review of the record in the present matter reveals that the corresponding docket entries for the June 16, 2020 order, entered at docket nos. 1992-X1518 and 1992-X1509, indicate the order was "docketed and sent" on June 17, 2020. *See* Docket Entry 36.6 at Docket No. 1992-X1518 ("Opinion and Order Sur Petition for Declaratory Judgment and Motion for Judgment on the Pleadings (J. Murphy)[.] This document was docketed and sent on 06/17/2020[.]"); Docket Entry 37.7 at Docket No. 1992-X1509

(same). The corresponding docket entry entered at docket no. 1992-X1519, however, contains no such notation. *See* Docket Entry 71.5 at Docket No. 1992-X1519 ("Opinion and Order Sur Petition for Declaratory Judgment and Motion for Judgment on the Pleadings (J. Murphy)[.]"). Moreover, we note that all parties in this matter are represented by counsel; thus, pursuant to Rule 236, the prothonotary was required to provide each party's counsel of record with notice of the entry of the June 16, 2020 order. Counsel for each party entered their appearance in each of the related cases and, in accordance with Pa.R.C.P. 1012, provided the address at which counsel may be served. We have confirmed that each docket reflects the same addresses for the parties' respective counsel.

In determining whether proper Rule 236 notice was provided in this matter, we remain cognizant of the decision in *Carr v. Michuck*, 234 A.3d 797 (Pa. Super. 2020), in which this Court stated:

> A prothonotary should make a notation that specifically states, *for example*, "Rule 236 notice provided on" followed by the date the notice was given, in order to comply with the notification mandate and procedural requirement of Rule 236. Anything short of such a notation constitutes a failure by the prothonotary to comply with the notification mandate and procedural requirement of Rule 236, and is a breakdown in court operations.

*Carr*, 234 A.3d at 805-06 (emphasis added).

Guided by our decision in *Carr*, we recently addressed the issue of whether a docket entry provides sufficient information for this Court to ascertain whether the prothonotary provided immediate notice of the entry of an order, as required by Rule 236. *See Smithson v. Columbia Gas of*

*PA/NiSource*, 2021 WL 3483301 (Pa. Super. August 9, 2021). In *Smithson*, "immediately following text indicating the prothonotary docketed the order, the prothonotary wrote, 'Sent to [parties' counsel.]'" *Id.* at *3. The *Smithson* Court opined that based on the context of the docket entry, the use of the term "sent to" immediately following the text indicating the order had been docketed, was sufficient "to infer logically that the note references the prothonotary's provision of notice pursuant to Rule 236." *Id.* It emphasized, however, that Rule 236 makes clear that "the prothonotary must note on the docket *the date* the parties are given notice of the order." *Id.* (quoting *Fischer v. UPMC Northwest*, 34 A.3d 115, 121 (Pa. Super. 2011) (emphasis added). "The date the notice was sent is crucial." *Id.*[7] Consequently, the *Smithson* Court stated that, "even if it were to infer the

---

[7] The Court explained:

> Rule 236 requires the notice to be immediate. *See* Pa.R.C.P. 236(a) ("The prothonotary shall immediately give written notice of the entry of … any order[.]"). Because the appellate clock starts running once the prothonotary records the giving of the Rule 236 notice in the docket, appellate courts need to have a clear, verifiable way to determine that Rule 236 notice was indeed provided. *See Carr*, 234 A. 3d at 805 (quoting *Frazier*, 735 A.2d at 115) ("This procedural requirement serves 'to promote clarity, certainty and ease of determination, so that an appellate court will immediately know whether a pleading was filed in a timely manner, thus eliminating the need of a case-by-case determination.'")[)]; *Fischer*, 34 A.3d at 122 ("[T]he definitive assignment of responsibility [to the prothonotary] and the requirement of a record of performance of that responsibility are intended to avoid ambiguity and speculation.").

*Id.*

notation on the docket indicates the prothonotary sent a Rule 236 notice to the parties, [the docket entry] is ambiguous [as to] whether the prothonotary sent the notice to the parties on the same day the order was entered on the docket[,]" because of the prothonotary's failure to note the date on which the notice was provided. Accordingly, it was constrained to conclude there had been a breakdown in court operations. *Id.* at *4.

Instantly, we note that unlike **Smithson**, the docket entries at docket nos. 1992-X1518 and 1992-X1509 clearly indicate the date on which notice of the June 16, 2020 order was sent. Thus, not only are we able to infer logically that the docket entry references the prothonotary's sending of the requisite Rule 236 notice, **see id.** at *3, we are also able to state "with certainty and confidence" the date on which such notice was given. **See Carr**, 234 A.3d at 806 (noting that in order to apply the bright-line rule announced in **Frazier** and to determine when the appeal period has begun to run, the Court needs to know "with certainty and confidence" when the appellate period commenced). Based on the foregoing, we deem the record regarding docket nos. 1992-X1518 and 1992-X1509 to be sufficient to discern that proper notice of the June 16, 2020 order was provided to all parties' counsel, on June 17, 2020, in compliance with Rule 236.[8]

_____

[8] To avoid confusion and/or uncertainty in future cases, we emphasize the importance of the prothonotary's including in its docket entries reference to "Rule 236 notice" and the date on which such notice was provided, in order to ensure compliance with the notification requirements of Pa.R.C.P. 236. **See Carr**, 234 A.3d at 805-06.

Regarding docket no. 1992-X1519, however, the prothonotary's failure to note on the docket that Rule 236 notice was provided and the date on which it was sent plainly constitutes a breakdown in court operations. **See Fischer**, 34 A.3d at 120 (determining there was an administrative breakdown where the prothonotary failed to comply with the requirements of Rule 236). Nevertheless, given the specific circumstances of this matter, in which Appellants appeal from a single order entered on three separate dockets, in three related cases involving the same parties, which have been consolidated *sua sponte* on appeal, and having already determined that proper Rule 236 notice was given in the other two cases, we discern that it would be a waste of judicial resources to quash the appeal at no. 1992-X1519 and remand the matter merely for the prothonotary to provide duplicative notice of the June 16, 2020 order. Rather, in the interest of judicial economy, and in keeping with the spirit of **Johnston the Florist, Inc. v. TEDCO Const. Corp**, 657 A.2d 511 (Pa. Super. 1995), recognizing that appellate courts may "regard as done that which ought to have been done," **see id.** at 514-15 (citation omitted), we deem the requisite Rule 236 notice to also have been provided in this case, on June 17, 2020.[9]

---

[9] We direct the Montgomery County prothonotary to make a notation at docket no. 1992-X1519 that Rule 236 notice was given on June 17, 2020.

Having determined that this Court possesses appellate jurisdiction over the instant appeal, we now turn to the merits of the parties' claims. Herein, Appellants raise the following issues for our review:

1. Did the orphans' court err by not enforcing modifications to [the T]rusts under 20 Pa.C.S.[] § 7740.1(a), which were agreed to by … [S]ettlor and [B]eneficiaries to allow for the replacement of trustees by a majority of beneficiaries after the death of … [S]ettlor?

2. Were Appellants entitled to judgment on the pleadings on the claim that their agreements to modify [the T]rusts were the product of undue influence where the facts alleged do not state any action upon which relief could be granted?

Appellants' Brief at 6 (unnecessary capitalization omitted).

Additionally, Executor presents the following issues for our consideration in his cross-appeal:

1. Does the orphans' court's clear and accepted error in *sua sponte* raising the issue of the Estate's standing require reversal, where the court recognized the disputed questions of material fact proffered by the Estate for which, absent reversal and should this case continue, the Estate will be precluded from presenting supporting evidence?

2. Does the orphans' court's express recognition of disputed questions of material fact concerning whether any agreement to the purported Trust modifications was obtained as a result of undue influence serve as an alternate basis to deny Appellants' motion for judgment on the pleadings?

Executor's Brief at 5 (unnecessary capitalization omitted).

As we begin our review of the foregoing claims, we remain mindful of the following:

"When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence."

- 13 -

> *In re Shoemaker*, 115 A.3d 347, 354 (Pa. Super. 2015) (quoting *In re Estate of Whitley*, 50 A.3d 203, 206 (Pa. Super. 2012) (citation omitted)). Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse the orphans' court's credibility determinations absent an abuse of discretion. *Id.* at 354-[]55 (citation omitted). "However, we are not constrained to give the same deference to any resulting legal conclusions." *Id.* at 355 (quoting *Whitley*, 50 A.3d at 207 (citations omitted)). "The orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *Id.* (quoting *Whitley*, 50 A.3d at 207 (citation omitted)).

*In re Cohen*, 188 A.3d 1208, 1210-11 (Pa. Super. 2018) (some brackets omitted).

Additionally, we note our well-settled standard of review for the grant or denial of judgment on the pleadings:

> Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. On appeal, we accept as true all well-pleaded allegations in the complaint.
>
> On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly be tried before a jury or by a judge sitting without a jury.
>
>> Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the

> pleadings. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Consolidation Coal Co. v. White*, 875 A.2d 318, 326 (Pa. Super. 2005) (some citations omitted).

Instantly, Walter, along with his son, Mark, and Walter's four adult grandchildren (Christopher, Lindsey, Liza, and Brittany), entered into Modification Agreements, which were effective August 18, 2017. These agreements specifically amended the terms of the Trusts regarding the appointment of successor trustees. Appellants' Brief at 16. The Trusts, as written in 1967, 1970, and 1973, provide in relevant part:

> B. If an individual trustee other than my son resigns or dies during the lifetime of the settlor, the settlor shall have the power exercisable within ninety days of such death or resignation to designate a successor trustee other than himself by any writing.
>
> C. If the settlor is not living or if the settlor fails to make such a designation within ninety days of the death or resignation of a trustee, each trustee appointed by the settlor shall have the power to designate an individual successor for himself by a writing.

OCOO at 3. The Trust agreements do not expressly provide Beneficiaries with any power to remove Independent Trustees. *Id.*

The Modification Agreements provide, in relevant part:

> Following the settlor's death or incapacity, a majority of the *sui juris* permissible income beneficiaries of a trust held hereunder (excluding the Trustees of an Income Accumulation Trust under Article Second) may at any time remove, with or without cause, any Independent Trustee of such trust (whether a bank or trust company or an individual Independent Trustee) and may appoint in his, her[,] or its place another Independent Trustee, or may leave such office vacant.

- 15 -

*Id.* at 4. "Following Walter's death, by Removal and Appointment of Trustees effective April 27, 2019, Mark and the other current income beneficiaries purportedly removed the Independent Trustees and replaced them with three successor trustees." *Id.*

In their first claim, Appellants assert that the orphans' court erred in refusing to enforce the Modification Agreements and in declaring that the removal of Independent Trustees was invalid. Appellants' Brief at 16. They maintain that section 7740.1(a) of the Pennsylvania Uniform Trust Act ("UTA"), 20 Pa.C.S. §§ 7701-7799.3, does not require court approval for a modification made with the consent of the settlor and the beneficiaries to be effective, and that the *Taylor* opinion does not preclude a settlor and beneficiaries from modifying a trust to allow for the replacement of trustees pursuant to section 7740.1(a). *See id.*; Appellants' Brief at 16-24.

Conversely, Appellees argue that:

[I]n Pennsylvania, trustees must be removed in accordance with the dictates of [section] 7766(b) and … a trust agreement may not be modified pursuant to [section] 7740.1 to provide beneficiaries of a trust with the power to remove a trustee without court approval. [Appellees] contend that *Taylor* holds that a modification under [section] 7740.1, without regard to subsection, is invalid, even when all internal requirements of [section] 7740.1 are fulfilled, where the modification purports to permit the removal or replacement of trustees by beneficiaries without court approval. [Appellees] maintain that *Taylor* holds, without qualification or exception, that court approval in accordance with [section] 7766 is required to accomplish the removal and replacement of trustees.

OCOO at 4-5.

As the orphans' court so aptly stated: "The question boils down to whether a modification that alters a trust to permit the removal and replacement of trustees is a trust modification or a removal and replacement of a trustee." Accordingly, we reproduce the following relevant sections of the UTA:

**§ 7740.1.   Modification or termination of noncharitable irrevocable trust by consent**

**(a)   Consent by settlor and beneficiaries**.—A noncharitable irrevocable trust may be modified or terminated upon consent of the settlor and all beneficiaries even if the modification or termination is inconsistent with a material purpose of the trust.  A settlor's power to consent to a trust's modification or termination may be exercised by a guardian, an agent under the settlor's general power of attorney or an agent under the settlor's limited power of attorney that specifically authorizes that action.   Notwithstanding Subchapter C (relating to representation), the settlor may not represent a beneficiary in the modification or termination of a trust under this subsection.

**(b)   Consent by beneficiaries with court approval**.—A noncharitable irrevocable trust may be modified upon the consent of all the beneficiaries only if the court concludes that the modification is not inconsistent with a material purpose of the trust.  A noncharitable irrevocable trust may be terminated upon consent of all the beneficiaries only if the court concludes that continuance of the trust is not necessary to achieve any material purpose of the trust.

*** 

**(d)   Consent by some beneficiaries with court approval**.— If not all the beneficiaries consent to a proposed modification or termination of the trust under subsection (a) or (b), the modification or termination may be approved by the court only if the court is satisfied that:

(1)   if all the beneficiaries had consented, the trust could have been modified or terminated under this section; and

(2)   the interests of a beneficiary who does not consent will be adequately protected.

20 Pa.C.S. § 7740.1.

### § 7766. Removal of trustee

**(a)   Request to remove trustee; court authority**.—The settlor, a cotrustee or a beneficiary may request the court to remove a trustee or a trustee may be removed by the court on its own initiative.

**(b)   When court may remove trustee**.—The court may remove a trustee if it finds that removal of the trustee best serves the interests of the beneficiaries of the trust and is not consistent with a material purpose of the trust, a suitable cotrustee or successor trustee is available and:

(1)   the trustee has committed a serious breach of trust;

(2)   lack of cooperation among cotrustees substantially impairs the administration of the trust;

(3)   the trustee has not effectively administered the trust because of the trustee's unfitness, unwillingness or persistent failures; or

(4)   there has been a substantial change of circumstances. A corporate reorganization of an institutional trustee, including a plan of merger or consolidation, is not itself a substantial change of circumstances.

20 Pa.C.S. § 7766(a), (b).

The interplay between sections 7740.1 and 7766 of the UTA was considered in *Taylor*. Therein, the Court treated the question of whether beneficiaries of a trust may amend the trust to allow them to remove a trustee without judicial approval as one of statutory interpretation and concluded that when sections 7740.1 and 7766 are read together, ambiguities exist. *Taylor*,

164 A.3d at 1155 ("We must read all sections of a statute 'together and in conjunction with each other,' construing them 'with reference to the entire statue.'") (citing 1 Pa.C.S. § 1922(2); **Housing Auth. of the County of Chester v. Pa. State Civil Serv. Comm.**, 730 A.2d 935, 945 (Pa. 1999)). "We must presume that in drafting the statute, the General Assembly intended the entire statute, including all of its provisions to be effective." **Id.** at 1157 (citing 1 Pa.C.S. § 1922). "Importantly, this presumption requires the statutory sections are not to be construed in such a way that one section operates to nullify, exclude or cancel another, unless the statute expressly says so." **Id.** (citations omitted).

The **Taylor** Court observed:

Permitting beneficiaries to modify a trust agreement pursuant to section 7740.1 to add a portability clause would have precisely this effect, namely to "nullify, exclude or cancel" the effectiveness of section 7766. To obtain modification of the trust agreement under section 7740.1 to permit beneficiaries to remove and replace the trustee—at any time thereafter (including on the day of approval of the modification), at their discretion, and without cause or judicial approval—the beneficiaries need show only that modification would not be inconsistent with a material purpose of the trust. 20 Pa.C.S. § 7740.1(b). In significant contrast, to remove and replace a trustee under section 7766, beneficiaries have to demonstrate, by clear and convincing evidence to the satisfaction of the [o]rphans' [c]ourt, that: (1) removal serves the best interest of the beneficiaries of the trust, (2) removal is not inconsistent with a material purpose of the trust, and (3) the beneficiaries have identified a suitable successor trustee. 20 Pa.C.S. § 7766(b). In addition, beneficiaries also have to show that the current trustee (1) has committed a serious breach of trust, (2) has demonstrated a lack of cooperation among cotrustees substantially impairing the administration of the trust, (3) has not effectively administered the trust as a result of unfitness, unwillingness or persistent failures, or (4) there has

- 19 -

been a substantial change of circumstances (not including a corporate reorganization). 20 Pa.C.S. § 7766(b)(1)-(4).

Beneficiaries seeking to remove and replace a trustee pursuant to section 7766 thus have substantial evidentiary hurdles to overcome, and the [o]rphans' [c]ourt must make numerous findings of fact and conclusions of law…. Modification under section 7740.1 entails no similar detailed analysis, as that provision imposes no comparable evidentiary requirements. As a result, beneficiaries seeking to remove and replace a trustee can totally avoid section 7766, as they may accomplish the same end much more easily by modification under section 7740.1.

*Id.* at 1157-58.

The ***Taylor*** Court further considered prior Pennsylvania law and the legislative history of section 7766, noting Pennsylvania's "long history of strictly limiting the removal and replacement of a trustee to circumstances in which an [o]rphans' [c]ourt determines that good cause exists to do so." ***Id.*** at 1158 (citations omitted). The Court recognized that the enactment of section 7766 reflected the General Assembly's intent to retain these principles in connection with the removal and replacement of a trustee. ***Id.*** at 1159.[10] In fact, the legislative history of section 7766 reflects a refusal by the General

---

[10] As the Court explained:

In section 7766, the General Assembly retained the requirement of judicial approval, and three of its four provisions still demand a showing of fault or negligence by the current trustee. 20 Pa.C.S. § 7766(b)(1)-(3). While section 7766 includes one no-fault provision permitting trustee replacement upon proof of a "substantial change in circumstances," even this subsection has been restricted in its application to preclude corporate reorganizations, mergers, or consolidations from constituting such a substantial change. 20 Pa.C.S. § 7766(b)(4).

*Id.* (footnote omitted).

Assembly to include a provision that would permit the beneficiaries of a trust to remove a trustee "whether or not the trustee was at fault." *Id.*

Finally, the *Taylor* Court considered the Uniform Law Comment to section 7740.1 to resolve any remaining doubt as to whether the power to modify trust terms under section 7740.1 may be used to bypass the more onerous requirements for trustee removal in section 7766. *Id.*[11]

> The UTC comment to section 7740.1 provides, in relevant part:
>
>> Subsection (b), similar to Restatement Third but not Restatement Second, allows modification by beneficiary action. The beneficiaries may modify any term of the trust if the modification is not inconsistent with a material purpose of the trust. Restatement Third, though, goes further than this Code in also allowing the beneficiaries to use trust modification as a basis for removing the trustee if removal would not be inconsistent with a material purpose of the trust. **Under the Code, however, [s]ection 706 is the exclusive provision on removal of trustees.** Section 706(b)(4) recognizes that a request for removal upon unanimous agreement of the qualified beneficiaries is a factor for the court to consider, but before removing the trustee the court must also find that such action best serves the interests of all the beneficiaries, that removal is not inconsistent with a material purpose of the trust, and that a suitable cotrustee or successor trustee is available.
>
> 20 Pa.C.S. § 7740.1, Uniform Law Comment (emphasis added).

---

[11] "The prefatory comment to the UTA states that the sections of the UTA that are substantially similar to their UTC counterparts are indicated by a reference to the UTC section number in the UTA section headings, and that the UTC comments for these designated provisions are applicable to the extent of the similarity." *Id.* at 1159-60 (internal quotation marks and citation omitted). The Court observed that the heading for section 7740.1 contains a reference to the corresponding UTC section number (UTC 411) and, thus, concluded that it could "consider the UTC's Uniform Law Comment as evidence of the General Assembly's intent with respect to the proper application and scope of section 7740.1." *Id.* at 1160.

*Id.* at 1160. By enacting section 7740.1 of the UTA, in light of this comment, the ***Taylor*** Court concluded that "the legislative intent with respect to the interplay between sections 7740.1 and 7766 is clear—the scope of permissible amendments under section 7740.1 does not extend to modifications … permitting beneficiaries to remove and replace a trustee at their discretion; instead, **removal and replacement of a trustee is to be governed exclusively by section 7766**." *Id.* at 1160-61 (emphasis added).

Instantly, the orphans' court noted that, just "[a]s the ***Taylor*** trust did not expressly provide the beneficiaries with any power to remove the corporate trustee, the Garrison Trusts [also] did not expressly provide … [B]eneficiaries with any power to remove … Independent Trustees." OCOO at 10. Thus, the court opined:

> In light of the Supreme Court's opinion in ***Taylor***, we are constrained to hold that if the trust modification allows for removal and replacement of a trustee, it is governed by [section] 7766. To allow a modification pursuant to [section] 7740.1 that provides for removal and replacement of a trustee, whether the modification is made pursuant to the provisions of subsection (a), (b), or (d), would render [section] 7766 meaningless. The ***Taylor*** Court's analysis and reasoning are equally applicable to any modification of an irrevocable trust to permit for removal of trustees. When adopting [section] 7766, the legislature did not carve out an exception for modifications made under [section] 7740.1(a) and did not distinguish the application of [section] 7766 to [section] 7740.1(a) from its applicability to [section] 7740.1(b) or (d). Likewise, the ***Taylor*** Court made no exception to allow modifications of trusts for removal of trustees made with the consent of a settlor and beneficiaries. Following the legislature's intent, the Court held that UTA [section] 7766 is the exclusive provision for removal of trustees and, therefore, an end run on the stringent requirements of [section] 7766 could not be made by using a different UTA provision governing modification by

consent to add a portability clause to a trust. As such, … Independent Trustees of the Garrison Trusts may be removed and replaced only pursuant to [section] 7766, the statutory default provision for removal and replacement of trustees.

*Id.* at 11-12. The orphans' court added: "While the Trusts theoretically could be terminated with the consent of the settlor and all beneficiaries, what cannot be done, even with the consent of the settlor and all beneficiaries, is to modify the Trusts under [section] 7740.1(a) to override the requirements of [section] 7766 for removal of trustees." *Id.* at 13. The court concluded that its foregoing legal analysis was sufficient to deny both the petition for declaratory judgment and motion for judgment on the pleadings. *Id.* at 14. We discern no error of law or abuse of discretion in the orphans' court's analysis regarding the validity of the Modification Agreements. Accordingly, we deem Appellants' first claim to be meritless.

Next, Appellants assert that they were entitled to judgment on the pleadings regarding Executor's claim that the Modification Agreements were the product of undue influence. Appellants' Brief at 35. Executor alleges that Walter was unduly influenced by his children, Mark and Susan Garrison, into signing the Modification Agreements. More specifically, he asserts that Mark and Susan "exerted enormous undue and unnecessary pressure and stress" on the decedent following a "lengthy hospital stay" without permitting him to read the documents, and that the decedent's attorney was not present at the time. *Id.* at 36 (citing Executor's Answer and New Matter, 11/8/19, at 22-23). Appellants claim they are entitled to judgment on the pleadings, as

Executor failed to establish a claim for undue influence, "or in fact, any claim which could invalidate the [Modification] Agreements." *Id.* at 37.

In response to Appellants' claims, the orphans' court stated: "There remain disputed questions of material fact concerning whether the Settlor's agreement to the purported modifications was obtained as a result of undue influence[.]" OCOO at 14. While the court noted that the existence of such questions of material fact would also preclude it from granting judgment on the pleadings with respect to Appellants' petition for declaratory judgment,[12] it concluded that these questions "need not and cannot be decided at this juncture[,]" in light of its holding that the Modification Agreements are invalid. *Id.* at 14-15. We agree. In light of our disposition regarding the validity of the Modification Agreements and our upholding of the orphans' court's denial of the petition for declaratory judgment and motion for judgment on the pleadings on that basis, we need not address Appellants' claim regarding Executor's undue influence defense.

We now turn to the issues raised by Executor on cross-appeal. First, Executor asserts that the orphans' court erred when it *sua sponte* determined that the Estate does not have an ongoing interest in the Trusts and, therefore, is not a proper participant in these proceedings. Executor's Brief at 13. He further argues that such consideration of the Estate's standing in this matter

---

[12] *See John T. Gallaher Timber Transfer v. Hamilton*, 932 A.2d 963, 967 (Pa. Super. 2007) ("Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary.") (citation omitted).

- 24 -

constituted reversible error. *Id.* at 15. The crux of his argument is that in the event this Court allows the Modification Agreements to stand, the error could result in the loss of the Estate's defense and its ability to present evidence to support its claims of undue influence going forward. *Id.* at 16-17.

The orphans' court has since acknowledged, in its supplemental Rule 1925(a) opinion, that in reaching such conclusion, it effectively raised the issue of standing *sua sponte*:

> Upon further examination, the [c]ourt acknowledges the well-settled case law in Pennsylvania that a court is prohibited from raising the issue of standing *sua sponte*. ***In re Nomination Petition of DeYoung***, … 903 A.2d 1164, 1168 ([Pa.] 2006).
>
> Neither Mark Garrison nor any other party raised the issue of the Executor's standing in the proceedings before this [c]ourt. Rule 302(a) of the Pennsylvania Rules of Appellate Procedure provides: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pennsylvania courts have consistently held that the issue of standing may be waived by a party "if not objected to at the earliest possible opportunity." ***Thompson v. Zoning Hearing Bd. Of Horshum Twp.***, 963 A.2d 622, 625 n.6 (Pa. [Cmwlth.] 2009). This [c]ourt acknowledges that the issue of whether the Executor has standing cannot be raised by the Court *sua sponte*, and observes that this issue was waived by Mark Garrison's failure to raise it in connection with the proceedings to date.

Orphans' Court Supplemental Opinion ("OCSO"), 10/14/20, at 3.

Nevertheless, the court asserts that its consideration of the Estate's standing in this matter resulted in harmless error. *Id.* at 3. It explained:

> The [c]ourt's decision not to consider the arguments of the Executor is harmless error, as most of his arguments were ably advanced by … [Independent T]rustees and were considered by

the [c]ourt. With respect to whether the factual allegations in the answers to the motion for judgment on the pleadings set forth a claim to invalidate the [M]odificaton [A]greements as the product of undue influence exercised upon Walter Garrison, … in light of the [c]ourt's holding, it was unnecessary to address this issue.

*Id.* at 2. We agree. Thus, we conclude that Executor is not entitled to any relief on this claim.

Finally, Executor argues that this Court should affirm the orphans' court's denial of the petition for declaratory judgment and motion for judgment on the pleadings on the grounds that questions of material fact exist concerning whether the Modification Agreements were obtained as a result of undue influence. Executor's Brief at 18. In light of our disposition, we decline to address this argument.

Accordingly, we affirm the orphans' court's June 16, 2020 order denying Appellants' petition for declaratory judgment and motion for judgment on the pleadings.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2021

- 26 -