2022 PA Super 154

| | | |
|---|---|---|
| IN RE:  TRUST B UNDER AGREEMENT OF RICHARD H. WELLS DATED SEPTEMBER 28, 1956 | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  V.M.I. FOUNDATION, INC. | : : : : : | No. 1269 WDA 2021 |

Appeal from the Order Entered October 5, 2021
In the Court of Common Pleas of Venango County
Orphans' Court at 2005-00235

BEFORE:  STABILE, J., MURRAY, J., and McLAUGHLIN, J.

OPINION BY MURRAY, J.:                    **FILED: SEPTEMBER 7, 2022**

In this case of first impression, V.M.I. Foundation, Inc. (Appellant), appeals from the order which denied Appellant's motion for summary judgment; granted summary judgment in favor of Appellees, PNC Bank, N.A. (PNC) and the Commonwealth of Pennsylvania; and denied Appellant's petition to show cause why the Trust of Richard H. Wells (Trust) should not be terminated.[1]  After careful consideration, we affirm.

FACTS

---

[1] Appellant emphasizes this case is one "of first impression applying the Charitable Trust Termination Statute."  Appellant's Brief at 9 (referencing 20 Pa.C.S.A. § 7740.3(e)); **see also** Appellant's Reply Brief at 21.  The Pennsylvania Attorney General, on behalf of the Commonwealth and participating as parens patriae, stated "there is no law on … Section 7740.3[(e)], which is the statute at issue[;] there is no case law."  N.T., 8/30/21, at 25.

Appellant is the sole beneficiary of the Trust, and a charitable organization pursuant to Section 501(c)(3) of the United States Internal Revenue Code. *See* 26 U.S.C.A. § 501(c)(3). Appellant "holds and oversees Virginia Military Institute's (hereinafter referred to as "VMI") endowment assets." Petition to Show Cause, 5/6/19, at 6. VMI is a public university in Lexington, Virginia. PNC is the Trustee.[2]

The orphans' court described the evolution of the Trust as follows:

> Richard H. Wells ("Wells") for much of his life was a resident of Oil City, Venango County, Pennsylvania. Wells was a 1924 graduate of Virginia Military Institute ("VMI"). In 1952, Wells became president of and was appointed to the Board of Directors of the Oil City Trust Company. Wells aggressively led his bank to expand and acquired additional banks and in 1954, the Oil City Trust Company changed its name to First Seneca Bank and Trust Company following the purchase of two other local banks. Mr. Wells continued the expansion of the bank by merger with two other banks and was continually reelected as president of the bank until his retirement on December 31, 1963. It was stated in his obituary that during the 12 years for which he served as president, the bank "quintupled in size." See (Brief of Trustee, p.3). In 1956, Wells created the Richard H. Wells Revocable Trust Agreement dated September 28, 1956. The agreement established First Seneca Bank and Trust Company of Oil City, Pennsylvania as the Trustee. Mr. Wells died on March 30, 1968, whereupon the trust agreement became irrevocable. During his lifetime, Wells amended the trust agreement four times, in 1960, in 1961, in 1963, and in 1965. Originally the trust agreement provided that Wells' wife or his children would receive the net income of the trust for life, with the power to invade principal in the trustee's discretion for the benefit of his wife or children. Upon the death of his wife, the trust would be divided into new trusts

---

[2] PNC succeeded the original Trustee, First Seneca Bank and Trust, on November 11, 2009, "after a series of mergers and acquisitions, both during Mr. Wells' life and after[.]" PNC's Brief at 13-14.

for each of his children and then upon their death it would be distributed under the terms of their wills or to their issue free of the trust. If there was no issue then the assets of the trust would be distributed to various individuals with the residue, if any, to VMI to be added to its general endowment fund and identified as a memorial to Richard H. Wells and the class of 1924. The amendment in 1960 changed the terms of the agreement so that VMI was to receive "favorable consideration" in the allocation of trust income, instead of a gift of the residue to VMI to be added to its general endowment fund. In 1961 and in 1963, the gift to VMI continued to be "favorable consideration" for the distribution of the trust income of a contingent charitable remainder. Then **in 1965, Wells amended the trust for the final time**. **In this amendment he removed all references to his son and provided that upon his wife's death, two other individuals would receive lump sum payments instead of money in trust, and then the remaining principal would form a perpetual charitable trust. VMI as the sole remainder beneficiary was to receive the income at least annually**, which would be credited to the class of 1924.

Orphans' Court Opinion and Order, 10/5/21, at 1-2 (emphasis added).

Mr. Wells died on March 30, 1968. His wife died on August 14, 2004.

Mr. Wells' fourth and final amendment to the Trust, in Paragraph B.5., states

that upon Mrs. Wells' death,

the Trustee shall add any accumulated and undistributed income in the trust to the principal thereof, and shall hold the thus augmented principal in trust, in perpetuity, and the Trustee shall pay and distribute the net income of the Trust, in perpetuity, at least annually, to [Appellant], Virginia Military Institute, of Lexington, Virginia, which distributions shall by [Appellant], Virginia Military Institute, be credited to the Class of 1924, and which distributions shall be unrestricted, to be applied for such purposes as the governing board of [Appellant] may from time to time determine.

Amendment to Revocable Trust Agreement, 7/7/65, at 4.

- 3 -

Presently, Appellant asserts "the approximate annual income is $67,000 per year (a 3.35% return), and with fees of approximately $18,500 per year, the Trustee's fees represent approximately twenty-eight percent (28%) of the income of the Trust in 2017, which is out of proportion to the intended benefits of the Trust to its beneficiary." Petition to Show Cause, 5/6/19, at 7, ¶ 38.

PROCEDURAL HISTORY

On May 6, 2019, Appellant filed a petition to show cause why the trust should not be terminated, or, alternatively, why PNC should not be removed and BNY Mellon be appointed as successor trustee.[3] Appellant sought termination of the Trust pursuant to the Charitable Trust Termination Statute, 20 Pa.C.S.A. § 7740.3(e) (Judicial termination of charitable trusts).[4]

Appellant averred,

19. Currently, the Trust has assets of approximately $2,000,000 and generates income of approximately $67,000 per year (a 3.35% return) while incurring fees of approximately $18,500 per year and other expenses of $750 for tax return preparation (or approximately 0.96% of the trust corpus), which excludes any fees which the Trustee or its holding company may have realized from the mutual or commingled investments funds sponsored by PNC Bank and not rebated back to the Trust.

20. The Trustee's fees represent approximately twenty-eight percent (28%) of the income of the Trust in 2017, leaving [Appellant] approximately $47,750.

---

[3] Appellant subsequently withdrew the request to remove PNC as Trustee.

[4] Appellant stated it would "provide Notice of the within Petition to the Pennsylvania Office of the Attorney General," as required by 20 Pa.C.S.A. § 7740.3(e). Petition to Show Cause, 5/6/19, at 8.

Petition to Show Cause, 5/6/19, at 4.

Appellant argued "the Trust should be terminated, as the administrative expenses and other burdens are unreasonably out of proportion to the charitable benefits and [Appellant] will properly use and administer the assets in accordance with [Mr. Wells'] intentions." *Id.* at 5.  Appellant averred:

33. [Appellant] also incurs additional management and audit expense in accounting for the Trust in the preparation of its audited financial statements, which likewise reduces its net aid to VMI.

34. Terminating the Trust will also eliminate the costs of the tax and reporting expense incurred by the Trust and realize the economies of scale in the investment of its assets.

35. [Appellant] is a charitable institution under Section 501(c)(3) of the Internal Revenue Code and is subject to the oversight of the Attorney General of Virginia under Va. Code § 2.2-507.1.

36. Pursuant to Virginia [state law], [Appellant] manages its endowments in a manner similar to 15 Pa.C.S.A. § 5548(c) ["Investment of trust funds",] and 20 Pa.C.S.A. § 8113 ["Charitable trusts"].

37. Given the clear intent of [Mr. Wells] to benefit VMI in perpetuity, even small annual savings in these fees and expenses can become substantial over time and can be more properly used for the benefit of VMI.

38. As set forth above, the approximate annual income is $67,000 per year (a 3.35% return) and with fees of approximately $18,500 per year, the Trustee's fees represent approximately twenty-eight percent (28%) of the income of the Trust in 2017, which is out of proportion to the intended benefits of the Trust to [Appellant].

39. [Appellant] has been in existence since 1936 and VMI since 1839.  There is no reason to believe that they will not continue to provide educational benefits for the foreseeable future.

40. Additionally, [Appellant] has a long track record of managing sizeable assets with professional managers and Virginia's oversight of charitable institutions further assures satisfaction of [Mr. Wells'] intent.

Petition to Show Cause, 5/6/19, at 7-8.

PNC filed an answer in opposition, averring that PNC "serves in a fiduciary capacity and is bound by the terms of the Trust." Answer to Petition to Show Cause, 6/14/19, at 4. PNC argued "termination of the Trust would violate not only [Mr. Wells'] intent, but also the explicit terms of the Trust[.]"

On August 23, 2019, the Commonwealth of Pennsylvania, through the Office of the Attorney General and acting as *parens patriae*, intervened.[5]

Following discovery, Appellant filed a motion for summary judgment. Appellant requested the orphans' court enter summary judgment in its favor and against PNC, and order PNC "to transfer the assets of the Wells Trust to [Appellant] to be held in perpetuity as a permanently endowed fund (the "Wells Fund") with the annual distributions therefrom in accordance with Mr.

_____

[5] "The responsibility for public supervision [of charitable trusts] traditionally has been delegated to the attorney general to be performed as an exercise of his *parens patriae* powers." ***In re Tr. Established Under Agreement of Sarah Mellon Scaife, Deceased Dated May 9, 1963***, 276 A.3d 776, 787 n.9 (Pa. Super. 2022) (citation omitted). Thus, charitable trusts are continuously subject to the *parens patriae* power of the Commonwealth through its Attorney General and the supervisory jurisdiction of the courts. ***In re Shoemaker***, 115 A.3d 347, 350 n.3 (Pa. Super. 2015) (citations omitted). The Attorney General participates "as an indispensable party in every proceeding which affects a charitable trust, whether the proceeding be one of invalidation, termination, administration or enforcement of such trust." ***In re Voegtly's Est.***, 151 A.2d 593, 594 (Pa. 1959).

Wells' specific instructions[.]" Motion for Summary Judgment, 1/12/21, at 1. Appellant claimed there were "no issues of material fact." *Id.* at 2.

Both PNC and the Commonwealth filed responses in opposition. In addition, PNC filed a counter motion for summary judgment, seeking summary judgment in favor of PNC, dismissal of Appellant's petition for rule to show cause, and reimbursement from the Trust for fees and costs (including attorneys' fees). *See generally*, Counter Motion for Summary Judgment, 1/29/21. Likewise, the Commonwealth sought summary judgment and dismissal of Appellant's petition to show cause. *See* Commonwealth's Cross Motion for Summary Judgment, 2/5/21. On February 16, 2021, PNC filed its joinder to the Commonwealth's cross motion for summary judgment. Appellant, PNC, and the Commonwealth submitted briefs. The orphans' court scheduled oral argument for August 30, 2021.

After hearing the parties' arguments, the orphans' court issued the following order, stating:

> The Motion for Summary Judgment of [Appellant] is denied;
>
> The Counter Motion for Summary Judgment of PNC Bank, National Association, Trustee is granted. The Petition of [Appellant] TO SHOW CAUSE WHY THE TRUST SHOULD NOT BE TERMINATED OR, ALTERNATIVELY, WHY PNC BANK SHOULD NOT BE REMOVED AND BNY MELLON BE APPOINTED AS SUCCESSOR TRUSTEE, is denied,
>
> The Cross Motion of the Commonwealth of Pennsylvania for Summary Judgment in opposition to the Petition of [Appellant] is granted. The Petition of [Appellant] TO SHOW CAUSE WHY THE TRUST SHOULD NOT BE TERMINATED OR, ALTERNATIVELY, WHY PNC BANK SHOULD NOT BE REMOVED AND BNY MELLON BE APPOINTED AS SUCCESSOR TRUSTEE, is denied.

Order, 10/5/21.

With the order, the orphans' court issued an opinion explaining its denial of Appellant's request to terminate the Trust. The court determined Mr. Wells "wanted a charitable trust to go on in perpetuity rather than an outright gift." **See** Orphans' Court Opinion, 10/5/21, at 7 (stating, "Since the language and circumstances surrounding the establishment of the [T]rust leave no doubt as to [Mr. Wells'] intent, there is nothing further to analyze."). Accordingly, the orphans' court denied Appellant's motion for summary judgment, granted summary judgment in favor of PNC and the Commonwealth, and denied Appellant's petition to show cause.

Appellant timely appealed. Both Appellant and the orphans' court have complied with Pa.R.A.P. 1925. In response to Appellant's Rule 1925(b) concise statement of matters complained of on appeal, the orphans' court issued a two-page supplemental opinion "to be considered" with its prior opinion. **See** Supplemental Opinion, 12/28/21.

## ISSUES

Appellant presents two issues for our review:

1. Whether as a matter of law [Appellant] is entitled to the remedy sought by its Motion for Summary Judgment, specifically the termination of the Wells Trust with an award of the trust's assets to [Appellant] to be held on the conditions set forth in said motion?

2. Whether the Trial Court erred in granting PNC's Cross Motion for Summary Judgment thereby barring [Appellant] from raising any objection to the attorney's fees incurred by PNC in this case?

- 8 -

Appellant's Brief at 5.

ANALYSIS

In reviewing the orphans' court's order, we defer to the court's factual findings if supported by the record, but will reverse if the court's legal conclusions are erroneous. ***In re Estate of Hooper***, 80 A.3d 815, 818 (Pa. Super. 2013).

With regard to summary judgment,

> "[O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary." ***Petrina v. Allied Glove Corp.****,* 46 A.3d 795, 797–798 (Pa. Super. 2012) (citations omitted). "We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." ***Barnes v. Keller****,* 62 A.3d 382, 385 (Pa. Super. 2012), ***citing Erie Ins. Exch. v. Larrimore****,* 987 A.2d 732, 736 (Pa. Super. 2009) (citation omitted). "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." ***Id.*** The rule governing summary judgment has been codified at Pennsylvania Rule of Civil Procedure 1035.2, which states as follows.
>
> **Rule 1035.2. Motion**
>
> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1)  whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

> > (2)   if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

> Pa.R.C.P. 1035.2.

> "Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." **Babb v. Ctr. Cmty. Hosp.**, 47 A.3d 1214, 1223 (Pa. Super. 2012) (citations omitted), **appeal denied**, 65 A.3d 412 (Pa. 2013). Further, "failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." **Id.**

> > Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

> **Id.**, citing **Reeser v. NGK N. Am., Inc.**, 14 A.3d 896, 898 (Pa. Super. 2011), *quoting* **Jones v. Levin**, 940 A.2d 451, 452–454 (Pa. Super. 2007) (internal citations omitted).

**Cadena v. Latch**, 78 A.3d 636, 638–39 (Pa. Super. 2013).

Appellant first argues the orphans' court erred in denying Appellant's request to terminate the Trust, as "all of the elements of the Charitable Trust Termination Statute [were] met." Appellant's Brief at 24. According to Appellant, the orphans' court made "an erroneous determination that Mr. Wells clearly intended a perpetual trust and that intent totally controls." **Id.**

- 10 -

at 26. Appellant claims the orphans' court's "holding clearly misreads the Charitable Trust Termination Statute." *Id.* Appellant thus asks that this Court enter "final judgment" in Appellant's favor,

> and remand to the Trial Court for a determination of the only issues remaining – those relating to the appropriateness of the Wells Trust having incurred the yet to be determined legal expenses in its objection as requested by [Appellant]. Further, all attorney fees must be evaluated for reasonableness, although, in this case, that information has never been submitted to the Court by PNC.

*Id.* at 48-49.

Appellant's argument is based on subsection (e) of the Charitable Trust Termination Statute, which states:

> **(e) Judicial termination of charitable trusts.--**If the separate existence of a trust, whenever created, solely for charitable purposes results or will result in administrative expense or other burdens unreasonably out of proportion to the charitable benefits, the court may, upon application of the trustee or any interested person and after notice to the Attorney General, terminate the trust, either at its inception or at any time thereafter, and award the assets outright, free of the trust, to the charitable organizations, if any, designated in the trust instrument or, if none, to charitable organizations selected by the court, in either case for the purposes and on the terms that the court may direct to fulfill as nearly as possible the settlor's intentions other than any intent to continue the trust, if the court is satisfied that the charitable organizations will properly use or administer the assets.

20 Pa.C.S.A. § 7740.3(e).

"It is well-settled that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly, and **the plain language of the statute is generally the best indicator of**

- 11 -

**such intent**." ***Commonwealth v. Zortman***, 23 A.3d 519, 525 (Pa. 2011)

(emphasis added, citation omitted).

> With respect to trust interpretation,
>
> > the intent of the settlor is paramount, and if that intent is not contrary to law, it must prevail. ***Shoemaker***, 115 A.3d at 355 (quoting ***Estate of Nesbitt***, 438 Pa. Super. 365, 652 A.2d 855, 857 (1995)). In order to ascertain the intent of the settlor, the court must examine: "(a) all the language contained in the four corners of the instrument[;] (b) the distribution scheme[;] (c) the circumstances surrounding the testator or settlor at the time the will was made or the trust was created[;] and (d) the existing facts." ***In re Scheidmantel***, 868 A.2d 464, 488 (Pa. Super. 2005) (internal punctuation and citations omitted).

***In re Cohen***, 188 A.3d 1208, 1214 (Pa. Super. 2018).

Our research confirms a scarcity of case law, in Pennsylvania as well as other jurisdictions, addressing judicial termination of charitable trusts. We have found no factually analogous cases. There is one similar case, from the Lancaster County Court of Common Pleas, applying § 7740.3(e).[6]

In ***In re Schlegel***, No. 36-1990-0184, 2003 WL 26100147 (Pa.Com.Pl. Feb. 04, 2003), the settlor, Clara M. Schlegel, created a charitable trust known as the Arthur O. and Clara M. Schlegel Memorial Fund for Deformed Children of Berks County. The trust was established in 1984, and provided that upon Ms. Schlegel's death, the trustee was to

> hold, manage, invest and reinvest and apply the net income therefrom each year, together with an additional sum when

---

[6] While a decision of the Court of Common Pleas is not binding precedent, it may be considered for "persuasive authority." ***Darrow v. PPL Elec. Utilities Corp.***, 266 A.3d 1105, 1112 n.6 (Pa. Super. 2021) (citation omitted).

- 12 -

needed, not to exceed five percent (5%) of the principal of said Trust in any one year (which sum shall not cumulate from year to year), to assist in defraying the medical and hospital costs of treating and correcting physical deformities in children residing in Berks County who are either without parents or whose parents are unable financially to meet such expenses. In administering this Trust, the Trustee shall establish and utilize the recommendation of a duly constituted panel of representatives from local social service agencies in Berks County whose activities place such agencies in direct personal contact with persons in need of such services, in selecting (in the sole and uncontrolled discretion of Trustee) the persons who are to be the recipients of such assistance.

*Id.* (*quoting* Trust Agreement, 6/4/84, at ¶ 9.(Q)).

Ms. Schlegel died in 1988. The trustee, Susquehanna Trust & Investment Company, thereafter presented to the orphans' court a petition for adjudication which contained "averments appropriate to a petition for relief under Section 6110(c)," which was the judicial termination statute in effect at the time, and the predecessor to § 7740.3(e). ***See id.*** The trustee asked the orphans' court to terminate the trust and award the assets to the Berks County Community Foundation. Like Appellant, the trustee averred that termination of the trust and transfer of the assets,

would accomplish significant tax savings. At the present time the trust is recognized as a private foundation by the Internal Revenue Service. This status subjects the trust to an annual excise tax, detailed reporting requirements and limits on its operations. As a part of the Foundation the trust would have the status of a public charity and be relieved of these burdens.

***Id.***

However, the trustee also averred it had

- 13 -

experienced some difficulty in organizing an advisory board of Berks County residents and promoting community awareness of the availability of the fund within the geographical limits provided by the settlor. In August of 2000, the advisory board included the president of the Berks County Community Foundation as a member. Thereafter a successful collaboration between the trustee and the Foundation developed. An increase in the level of success enjoyed by the trustee in making funds available to appropriate recipients coincided with the involvement of the Foundation. The Foundation, which did not exist at the time of the death of Clara M. Schlegel, apparently was established in 1994. It now administers funds in excess of $25,000,000.00. The members of the board of the Foundation are prominent members of the Berks County community. Their familiarity with that community should facilitate the use of the Memorial Fund as intended by the settlor.

*Id.*

The orphans' court, noting the Attorney General had "expressed no objection to the granting of the relief requested in the petition," granted the trustee's request. *Id.* The court "directed the distribution of the balance herein to the Berks County Community Foundation for administration for the identical purposes contained in the trust agreement." *Id.* The orphans' court stated it considered "all [of] the circumstances" in concluding "the pursuit of the settlor's goals and objectives by the present trustee results in expenses and burdens which are unreasonably disproportionate to the charitable benefits." *Id.*

Instantly, the orphans' court concluded termination of the Trust was not warranted. The court explained:

We have studied the trust documents. We have studied the amendments to the trust. The documents are clear and easily understood. There are no issues of contradictory language. As to

- 14 -

whether Wells wanted a charitable trust to go on in perpetuity rather than an outright gift to VMI, we have the answer. In the first version of the Trust in 1956, Wells provided that the residue, after specific gifts, would go to VMI, to be added to its general endowment funds and identified as a memorial to the class of 1924. In every subsequent version of the Trust he shied away from the outright gift and in each version made a provision for a charitable trust. This was a man who clearly knew what he was doing. He was the President of a Bank and Trust Company. Wells wanted to make a gift in trust to his alma mater and he did. There is really nothing else to be considered. Since the language and circumstances surrounding the establishment of the trust leave no doubt as to his intent there is nothing further to analyze.

Orphans' Court Opinion, 10/5/21, at 7.

We discern no error. There are important differences between this case and *In re Schlegel*, where the parties — notably the trustee and Commonwealth — were proponents of termination, and the trustee made the request. In *In re Schlegel*, the trustee advanced an argument regarding beneficial tax treatment if the trust assets were converted from their status as a private foundation to part of a public charity. However, the trustee also averred it faced challenges fulfilling the settlor's charitable intent, having "experienced some difficulty in organizing an advisory board … and promoting community awareness of the availability of the fund within the geographical limits provided by the settlor." *In re Schlegel*, *supra*. Further, the trustee had developed "a successful collaboration … with the Foundation," which resulted in an "increase in the level of success enjoyed by the trustee in making funds available to appropriate recipients." *Id.* The orphans' court considered "all the circumstances" in concluding "pursuit of the settlor's goals

and objectives by the present trustee results in expenses and burdens which are unreasonably disproportionate to the charitable benefits." *Id.* Accordingly, the court granted the trustee's request to terminate the trust and transfer assets to the Foundation.

The orphans' court's decision in *In re Schlegel* is consistent with the language of the judicial termination statute. The statute in effect at the time, as well as the current version, effective November 6, 2006, are nearly identical. *See* 20 Pa.C.S.A. § 6110(c) ("If the … trust … results or will result in administrative expense or other burdens unreasonably out of proportion to the charitable benefits, the court may … terminate the trust … and award the assets outright … to the charitable organizations … designated in the conveyance, or if none, to charitable organizations selected by the court"); *compare with* 20 Pa.C.S.A. § 7740.3(e) ("If the … trust … results or will result in administrative expense or other burdens unreasonably out of proportion to the charitable benefits, the court may … terminate the trust … and award the assets outright … to the charitable organizations … designated in the trust instrument or, if none, to charitable organizations selected by the court").

Here, unlike *Schlegel*, the trustee (PNC) and the Commonwealth oppose termination of the Trust. Appellant claims termination is statutorily warranted because the Trust's "administrative expenses and other burdens are unreasonably out of proportion to the charitable benefits." *See* Petition

to Show Cause, 5/6/19, at 5, ¶ 25. Appellant bases this claim on the Trust's "expenses and investment inflexibility," which "would be completely avoided by a transfer of the Well's Trust's assets to [Appellant], which is not a Private Foundation." Appellant's Brief at 25. Appellant asserts that PNC "has refused to terminate the Trust only because it is putting its own financial interests (*i.e.* fees earned as Trustee) ahead of the best interests of the beneficiary of the Trust." Petition to Show Cause, 5/6/19, at 5, ¶ 23. In support, Appellant details its wealth management prowess. ***See, e.g., id.*** at 6-7 (averring Appellant "holds and oversees … endowment assets, which are approximately $500,000,000, constituting one of the largest per student endowments of any public university"; the "endowment's investment performance has ranked in the second quartile of similar colleges and universities at its level"; Appellant "uses a spending factor of approximately 4.75% of the endowment's 12-quarter average … allow[ing the] endowment to focus on its total return … in determining how much of the endowment can be properly appropriated"; Appellant "pays approximately 0.29% of the value of the endowment … for [] investment management and custodial fees, which is significantly less than the .96% currently paid by the Trust").

In practical terms — and according to Appellant — termination of the Trust and transfer of the assets to Appellant,

> [o]n a $2,000,000 endowment paying these fees would result in approximately $13,450 more in aid to VMI in a year, which would pay for approximately fifty-percent (50%) of the current fees and

charges for an in-state cadet at VMI and 25% for an out-of-state cadet.

Petition to Show Cause, 5/6/19, at 7, ¶ 32.

At oral argument, Appellant conceded the tax benefit from termination and transfer of the Trust would be "small," but in "the context of a Twenty-Nine Thousand Dollar ($29,000.00) bill for tuition and fees if we were using scholarship money, that means something in our family of having those funds available and not deflected [*sic*] or directed away. Remember, it's each year and every year these trusts are in perpetuity." N.T., 8/30/21, at 15.

PNC described Appellant's argument as suggesting "if any trust fee or expense may be reduced, then the statute allows termination of the charitable trust." PNC's Reply Brief in Support of Counter Motion for Summary Judgment at 3. At argument, PNC's counsel stated:

> There seems to be this argument that we can have a cost benefit analysis, right? We can save a little money here by getting rid of the trust.

N.T., 8/30/21, at 21.

As stated above, a settlor's intent "is paramount, and if that intent is not contrary to law, it must prevail." **Estate of Nesbitt**, 652 A.2d at 857. The facts of this case are not disputed. Appellant "has been in existence since 1936." Petition for Rule to Show Cause, 5/6/19, at 8, ¶ 39. Mr. Wells was aware of Appellant's existence when he created and amended the Trust between 1956 and 1965. Mr. Wells expressly identified Appellant in Paragraph B.5. of the final amendment, when he directed

> the Trustee shall pay and distribute the net income of the Trust, in perpetuity, at least annually, to **the VMI Foundation**, … which distributions shall by **the VMI Foundation**, Virginia Military Institute, be credited to the Class of 1924, and which distributions shall … be applied for such purposes as the governing board of **the VMI Foundation** may from time to time determine.

Amendment to Revocable Trust Agreement, 7/7/65, at 4 (emphasis added).

Upon review, we agree that judicial termination of the Trust was not warranted. Appellant seeks termination of the Trust because it would be more cost effective. However, Appellant has not proven the existence of "administrative expense or other burdens unreasonably out of proportion to the charitable benefits," as required by 20 Pa.C.S.A. § 7740.3(e). At argument, Appellant's counsel stated, "We accept that the *quid quo pro*, the payment of those fees for [PNC's] services rendered, are reasonable. They're market." N.T., 8/30/21, at 34. As there are no genuine issues of material fact, the orphans' court did not err in granting summary judgment in favor of PNC and the Commonwealth, and against Appellant.

Finally, we discern no error with respect to Appellant's second issue involving PNC's attorneys' fees. Appellant repeats the argument from its reply to PNC's motion for summary judgment, asserting that PNC's request for fees and costs was "premature," and the orphans' court must "determine if the trustee's attorneys' fees should be paid from the trust and if so, the appropriate amount." Appellant's Brief at 45-46; **see also** Reply to Respondents' Opposition to Petitioner's Motion for Summary Judgment, 3/2/21, at 10-12.

PNC maintains it properly requested reimbursement for fees and costs in its motion for summary judgment. PNC cites 20 Pa.C.S.A. § 7780.1 (stating a trustee "shall take reasonable steps . . . to defend claims against the trust."), and 20 Pa.C.S.A. § 7780.5 (a trustee may exercise its powers without court approval). PNC's Brief at 54. PNC further highlights that "the Trust terms explicitly authorize the Trustee '[t]o employ . . . counsel as it may deem necessary or proper in and about the exercise of the trust and to pay all expenses incident to the administration of the trust out of the trust estate.'" *Id.* (citing Trust, "ARTICLE III. POWERS OF TRUSTEE." at 6). PNC cites *In re McKinney*, 67 A.3d 824, 829 n.5 (Pa. Super. 2013), for the proposition that a trustee's attorneys' fees may be paid from a trust when the trustee "successfully defends itself against removal." PNC's Brief at 55.

The orphans' court states there is "no authority" for Appellant's argument that it erred in finding the Trust responsible for PNC's attorneys' fees. Supplemental Opinion and Order, 12/28/21, at 2. The court added that "the question of attorneys' fees as being unreasonable is not before the [c]ourt." *Id.* Appellant concedes the submission of "facts related to the fees . . . has not yet occurred." Appellant's Brief at 48. On this record, we conclude the orphans' court did not err in determining the Trust would reimburse PNC for attorneys' fees incurred in defending Appellant's action seeking termination of the Trust.

For the above reasons, we affirm the order denying Appellant's request to terminate the Trust under 20 Pa.C.S.A. § 7740.3(e), and entering summary judgment against Appellant and in favor of PNC and the Commonwealth.

Order affirmed.

Judge McLaughlin joins the opinion.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/7/2022